CHISHOLM–RYDER COMPANY, INC., a corporation, and New York State Concord Grape Production Research Fund, Inc., a corporation, Plaintiffs,

v.

LEWIS MANUFACTURING COMPANY, INC., a corporation, et al., Defendants.

Civ. A. No. 47–69 ERIE.

United States District Court,
W. D. Pennsylvania.

July 17, 1975.

As Corrected Aug. 18, 1975.

William J. Kelly, Erie, Pa., Kenneth R. Sommer, Buffalo, N. Y., for plaintiffs.

Charles L. Lovercheck, Erie, Pa., Edward Orton, North East, Pa., for defendants.

## OPINION

WEBER, District Judge.

This is a suit for infringement of patent. Jurisdiction is based on 28 U.S.C. § 1338(b). Venue is properly laid in this court.

Defendants have admitted that each of the claims in the patent in suit reads on their grape harvesters and hence are infringed if the patent is valid. The defendants defend on the grounds that the claimed invention is obvious under 35 U.S.C. § 103 and was anticipated by being described in a printed publication more than one year prior to the date of application for patent in the United States under 35 U.S.C. § 102(b). The defendant also claims that the patent is invalid by reason of a fraud upon the Patent Office for the failure of the applicants to disclose to the Patent Office the prior art of which they had knowledge.

The patent in question results from a continuation-in-part application of the inventor based on a parent application of an earlier date. The parent application, Serial No. 99,507 entitled "Grape Harvesting Machine" was filed on March 30, 1961 by Mr. Shepardson; this application was repeatedly rejected until final rejection on August 19, 1964, whereupon an appeal was filed. Before that appeal was dismissed the inventor filed a second application at Serial No. 449,394 called a continuation-in-part application. On August 31, 1966 an interference was filed and further proceedings were held before the Patent Office. The patent in question was finally granted on April 30, 1968, U. S. Patent No. 3,380,236. The patent in question contained eighteen claims. Subsequent to the filing of this suit claims 3, 4, 7, 9, 10, 13, 16 and 18 were disclaimed. The alleged infringement concerns ten claims on which claim number 1 is in independent form and on which claims 2, 5, 6, 8, 11, 12, 14 and 15 are dependent, directly or indirectly. Claim 17 is an independent claim.

A continuation-in-part (CIP) application is one which includes both matter common to the parent application and matter not common to or not included in the parent application. The claims in the CIP application which find support in specification of the parent application are entitled to the filing date of the parent application. The claims in the CIP application which do not find support in the parent application are entitled to no earlier filing date than that of the filing date of the CIP application. 35 U.S.C. § 120.

The claims of U. S. Patent No. 3,380,-236 which were not disclaimed and which are claimed to be infringed in this action read substantially as follows:

Claim 1. A machine for harvesting clustered fruit from vineyards where rows of vines have been trained on a generally horizontal trellis wire extending longitudinally of each row in such manner that a curtain of fruit bearing canes hangs from said longitudinal trellis wire, comprising a frame movable through the vineyards alongside each row of vines, generally horizontal bar means arranged at a level close to the level of the longitudinal trellis wire of the row being harvested, and means on said frame arranged to support and project said bar means longitudinally into the side of the curtain of canes of the row being harvested, and to move said bar means transversely, thereby to shake the fruit from said curtain of canes of the row being harvested, and means gathering and transporting away the fruit shaken from the curtain of canes being harvested.

Claim 2. Claim 1 wherein said bar means is moved upwardly.

Claim 5. Claim 1 wherein said bar includes a hub rotatable about a generally upright axis and arms secured to said hub to project in radial planes therefrom, said arms traversing a major portion of a half circle while engaged with said curtain of canes being harvested.

Claim 6. Claim 5 wherein said hub is freely rotatable and said arms are at least four in number in spaced relation around said hub, each arm entering the curtain of canes being harvested at a generally horizontal acute included angle relative to the row being harvested and being moved in response to the forward movement of said frame and in response to the restraint of the curtain of canes being harvested through a plane generally perpendicular to said row and thence to a generally horizontal acute included leaving angle relative to said row, whereby the movement of the outer end of each arm approximates the general speed of the frame.

Claim 8. Claim 1 wherein said bar means comprises at least one arm the upper surface of which, on entering the curtain of canes of the row being harvested, is at an acute included angle to the horizontal and slopes downwardly toward its end which is projected into the curtain of canes being harvested, whereby such projection tends to lift the curtain of canes being harvested.

Claim 11. Claim 1 wherein said gathering and transporting means includes inner and outer walls arranged generally parallel with the line of movement of the machine and which are spaced from each other to form a way through which the said curtain of canes being harvested passes and which contains said bar means.

Claim 12. Claim 11 wherein that wall which is arranged on the truck side of said curtain of canes has upper and lower portions between which the trunks of the vines pass.

Claim 14. Claim 1 wherein said bar includes a freely rotatable hub and arms fixed to said hub to project radially therefrom in spaced relation to one another, and wherein

said support and shake means comprising means supporting said hub for free rotation about a generally upright axis, and means shaking said hub supporting means up and down and positioning said sub alongside said curtain of fruit bearing canes in such position that its arms progressively enter endwise into the said of said curtain below said longitudinal trellis wire, the axis of said hub being at an acute included angle with reference to the vertical to slope downwardly toward the curtain of fruit bearing canes, whereby the entering elevation of the outboard ends of said arms into the side of said curtain of fruit bearing canes is lower than the leaving elevation thereof so that upon moving along within the curtain of fruit bearing canes the arms are brought into engagement with the underside and lift said longitudinal trellis wire.

*Claim 15.* Claim 14 wherein said acute included angle is in the order of about 30°.

*Claim 17.* In a machine for harvesting fruit from vines supported in a row formation comprising in combination, a rotatable vine-impinging means carried by the machine, means mounting said impinging means for intermittent impingement against said vines, means associated with and movable independently of said vine-impinging means for imparting reciprocatory motion to the vine-impinging means, a power source carried by the machine, and a driving connection between said power source and said independently movable means.

Our examination of Claim I of the patent in question, with the disclosures of the pertinent parts of the parent application, to determine the critical date for the disclosures relative to the freely rotatable spiked wheel which is inserted into the grape vines underneath the trellis wire, leads us to the conclusion

that Claim I of the patent must be limited to a spiked wheel so spaced that one spike which is already imbedded in the vine foliage causes rotation of the hub supporting it and the succeeding spike, to project such succeeding spike into the vine foliage. Thus, a foliage-imbedded spike constitutes the "means on the frame arranged to . . . project said bar means longitudinally into the side of the curtain of canes of the row being harvested" as called for by Claim I.

Taking the critical date for anticipation as being April 16, 1964, one year prior to the date of the patent in question, the defendants have asserted nine items of purported prior art either in support of their argument that the patent is invalid under § 102(b) or under § 103. § 102(b) provides that a person shall not be entitled to a patent if "the invention was . . . described in a printed publication . . . more than one year prior to the date of application for patent in the United States." § 103 provides that a patent may not be obtained although the invention is not identically disclosed or described as set forth in § 102 of this title "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

The purported prior art asserted by the defendants, either in support if its defense of publication under § 102(b) or § 103 is as follows:

1. Lamouria Patent No. 2893,194— Application filed August 24, 1956, Patent issued July 7, 1959.

2. Tubbs Patent No. 2933,323—Application filed November 6, 1958, Patent issued July 25, 1961.

   (These two references were cited by the patent office. Under 35 U.S.C. § 102(e) the effective date of a patent filed by another for consideration as prior art is the

filing date by said other person of an application for such patent).

3. Erie-Times Newspaper article, January 10, 1960.

4. Grape Belt Newspaper article, March 3, 1960 (same text as below).

5. Paper: "Grape Harvesting Research at Cornell", by Shaulis, Shepardson and Moyer, delivered at New York State Horticultural Society, Proceedings, 105th Annual Meeting 1960, held January 19–22 and January 27–29, 1960, pp. 250–254, date of publication of printed bound volume not shown. (This item is identical to No. 4 above in text, but includes photographic illustrations).

March 30, 1960

One year prior to parent application.

6. Paper: "Grape Harvesting Research at Cornell-II", by Shaulis, Shepardson and Moyer, delivered at New York State Horticultural Society, Proceedings of 106th Annual Meeting held January 17–19, January 25–27, 1961, pp. 250–255, date of publication of printed bound volume not shown.

7. *Agricultural Engineering* Article, "Mechanical Grape Harvesting", by Shepardson, Studer, Shaulis and Moyer, February 1962 issue.

8. A Thesis by John Richard Padget, dated June 1959, catalogued in the Mann Library of Cornell University, July 21, 1959.

9. A Thesis by Henry Eugene Studer, dated February 1962, catalogued in Mann Library of Cornell University, February 15, 1962.

Our comparison of the claims of the patent in question with the parent application brings us to the conclusion that the subject matter of claims 12, 14 and 15 of the patent in suit is not disclosed in the Shepardson parent application and such claims are therefore subject to a declaration of invalidity under § 102 (b) if the invention was patented or described in a printed publication prior to April 16, 1964. With respect to the remaining claims of the patent in question the critical date for the application of § 102(b) would be March 30, 1960. Claim 14 differs from the parent application and from the prior art in its recitation of a specific orientation for the axis of the hub of the shaker wheel. Plaintiffs have referred to this as a "tipped axis claim". The axis of the hub is not only (1) tipped downwardly toward the curtain of the canes, but is also (2) tipped downwardly toward the rear of the harvester. It is further described as follows: Col. 16, lines 54–62,

"[T]he axis of said hub being at an acute included angle with reference to the vertical to slope downwardly toward the curtain of fruit bearing canes whereby the entering elevation of the outboard ends of said arms into the side of said curtain of fruit bearing canes is lower than the leaving elevation thereof so that upon moving along within the curtain of fruit bearing canes the arms are brought into engagement with the under side and lift said longitudinal trellis wire."

Claim 15 solely recites that it describes a machine as set forth in Claim 14 wherein "said acute included angle is in the order of about 30°."

Therefore, the prior art which would have made this invention obvious or the publication which anticipated this invention with respects to claims 1, 2, 5, 6, 8, 11 and 17 must be those which antedated the parent application of March 30, 1961, by one year.

Plaintiffs concede that the article "Mechanical Grape Picker Does Its Job But Still Leaves Problems To Be Solved" which appeared in the March 3, 1960 edition of *The Grape Belt*, is a printed publication having a date of March 3, 1960, which is more than one year prior to the date of filing the Shepardson parent application.

With regard to the defense of prior publication a general observation on the

evidence may serve to clarify the nature of the claimed publications. The Inventor of the "Apparatus for Harvesting Grapes" upon which patent number 3,380,236 was granted is E. S. Shepardson, a professor of Agricultural Engineering at Cornell University, Ithica, New York. He, together with a graduate student studying under him and in cooperation with representatives of the New York State Agricultural Experiment Station at Geneva, New York, and the New York State College of Agriculture at Ithica, New York, began in 1957 a cooperative project to study mechanical harvesting of grapes. There was no attempt to keep the progress of the cooperative study secret and in the *Erie Times News* of Erie, Pa., a newspaper of general circulation, on Sunday, January 10, 1960, an extended description of the machine appeared. It described a demonstration of a model of the machine exhibited recently at the Fredonia, Chautauqua County, New York, experiment station of "what appears to be a soundly principled mechanical grape picker." Two months following this another article appeared in the March 3, 1960 issue of *The Grape Belt*. The article in *The Grape Belt* recited the substance of a progress report made by Professor Shepardson and his colleagues, and gives what is reported to be a verbatim report of the progress report. This is the same report that was read at the January 1960 meeting of the New York State Horticultural Society, and published (with photographs) in the printed record of the *Proceedings*. The text of the *Grape Belt* article (except for the bibliographical references and photographs) is identical to the printed text of the *Proceedings*.

The January 1960 paper was entitled "Grape Harvesting Research at Cornell", together with photographs of the machine in question, including a close-up photo of the spiked wheel vibrator, was published in the printed and bound volume of the *Proceedings* of that meeting. The volume does not reveal the date of its publication, but a similar article entitled "Grape Harvesting Research Cornell-II" by the same authors also appears in the printed volume of the *Proceedings* of the New York State Horticultural Society at their 106th Annual Meeting in January 1961, and the 1961 article makes reference to the publication of the *Proceedings* of the 1960 meeting. In any event, the publication in the *Grape Belt* on March 3, 1960 establishes a date of publication.

In the February 1962 issue of *Agricultural Engineering* there is an article six pages in length, co-authored by the inventor and his colleagues describing in detail with accompanying photographs and drawings the development of the machine.

Meanwhile, high above Cayuga's waters, graduate students were at work under the supervision of Professor Shepardson. Bearing the date June 1959, a typewritten thesis was presented to the faculty of the graduate school of Cornell University for the degree of master of science by John Richard Padget. A copy of this thesis was deposited in the Mann Library of Cornell University and indexed in its card index. A copy of said thesis has been offered in evidence and admitted to be genuine but objections to its consideration as a publication have been made. The copy offered in evidence has an attached certification by the Librarian of the Mann Library in affidavit form attesting that it was catalogued into the Library on July 21, 1959. A reference to this thesis appears at the end of the paper published by the inventor and his colleagues in the *Proceedings* of the 105th annual meeting of the New York State Horticultural Society which was a paper delivered at the January 1960 meeting of that society. It is described as an "unpublished masters thesis".

Also offered into evidence and subject to the same objection as were posed to the prior thesis was a thesis entitled "Mechanical Harvesting of Concord

Grapes" bearing on the cover page the date February 1962, and presented to the faculty of the graduate school of Cornell for the degree of master of science by Henry Eugene Studer. This thesis was also deposited in the Mann Library of Cornell University and an index card prepared and the offered document contains the certification in affidavit form of the Librarian of the Mann Library indicating that it was catalogued into the Library on February 15, 1962. Footnote number 2 of the article published in the *Proceedings* of the New York State Horticultural Society 106th annual meeting held January 1961, refers to Studer as the source of certain material reported therein in these terms, "some data taken from unpublished material for MS Thesis, expected in June 1961".

We will refer to the objections to the consideration of the two graduate theses as publications at a later point in this opinion.

Before proceeding with further consideration of the details of the claims of the patent in question and their anticipation by prior publication or their obviousness we must consider certain controlling rules of law applicable to this case.

■ A patent is presumed to be valid and the burden of proof of invalidity lies upon the one contesting that issue. 35 U.S.C. § 282. However, this presumption of validity is significantly weakened if not completely destroyed where the patent office has not considered the most pertinent prior art.

"Where relevant prior art is not considered by the patent office, the presumption of validity of the patent is weakened or overcome." *Philips Electronic & Pharmaceutical Indus. Corp. v. Thermal Electronics Indus.,* 450 F.2d 1164, 1176 [3rd Cir. 1971].

See also *Gomez v. Granat Bros.,* 177 F.2d 266 [9th Cir. 1949]; *O'Leary v. Liggett*

*Drug Co.,* 150 F.2d 656 [6th Cir. 1945]; *Gerald M. Friend, Inc. v. Walsh,* 141 F.2d 180 [2nd Cir. 1944].

It is particularly important to note this qualification upon the presumption of validity in this case where so much of the published prior art, authored by the inventor and his colleagues and his graduate students was not placed before the patent office for its consideration. Mr. Stone, a retired patent examiner, who examined the application for the patent in question testified that he was unaware of the pertinent prior art and was allowed to express the opinion that had he been so aware he would have not permitted the claims to issue as they did.

■ A second principle of law applicable to the present case is that which mandates close scrutiny of combination patents, those claiming an assembly of old elements combined in a novel and unobvious manner. Plaintiffs admit that this is a combination patent by reciting in their brief "each claim of the patent in suit is a combination claim and its validity does not depend upon the novelty of any or all of its elements individually, but rather upon the novelty of the combination." In such a case,

"The claims in issue must be scrutinized 'with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements.' *Great Atlantic & Pacific Tea Company v. Supermarket Corp.,* 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 [1950]." *Sperry Rand Corp. v. Knapp-Monarch Co.,* 307 F.2d 344, 345 [3rd Cir. 1962].

The Supreme Court has stated the rule as:

"The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. . . . This case is wanting in any unusual or surprising consequences

from the unification of the elements here concerned, and there is nothing to indicate that the lower courts scrutinized the claims in the light of this rather severe test.

Neither court below has made any finding that old elements which made up this device perform any additional or different function in the combination than they perform out of it. . . Two and two have been added together, and still they make only four." *Great Atlantic & Pacific Tea Co. v. Supermarket Corp.*, 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 [1950].

In *Anderson's-Black Rock, Inc. v. Pavement Salvage Co. Inc.*, 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 [1969], the Supreme Court again treated this question:

"We conclude that while the combination of old elements performed a useful function, it added nothing to the nature and quality of the radiant-heat burner already patented. We conclude further that to those skilled in the art the use of the old elements in combination was not an invention by the obvious-nonobvious standard. Use of the radiant-heat burner in this important field marked a successful venture. But as noted, more than that is needed for invention." (396 U.S. pp. 62–63, 90 S.Ct. p. 308).

The defense of prior publication has been offered here. The plaintiffs contend that the rule of *Seymour v. Osborne*, 78 U.S. 516, 20 L.Ed. 33 [1870] should be applied, requiring that "the descriptions and drawings contain and exhibit a substantial representation of the patented improvement, in such full, clear, and exact terms as to enable any person skilled in the art or science to which it pertains, to make, construct, and practice the invention to the same practical extent as they would be enabled to do if the information was derived from a prior patent." (p. 555). While the rule of *Seymour v. Osborne* was developed in the

case of a foreign publication, we find that the same stringency is applied to American publications.

"For a prior publication to be sufficient to defeat a patent it must exhibit a substantial representation of the invention in such full, clear, and exact terms that one skilled in the art may make, construct and practice the invention without having to depend on either the patent or on his own inventive skills." *Philips Elec. & P. Indus. Corp. v. Thermal Indus.*, 450 F.2d 1164, 1169 [3rd Cir. 1971].

And

"It is sufficient that the description in the printed publication impart to the person of ordinary skill sufficient information which, coupled with the disclosures of the prior art, would enable him to devise the invention without further genuine inspiration or undue experimentation." *Struthers Scientific & Int. Corp. v. Rappl & Hoenig Co.*, 453 F.2d 250, 255 [2nd Cir. 1972].

A prior printed publication cannot be read in the light of knowledge gained from a reading of the patent in suit in order to anticipate or render obvious to one skilled in the art the subject matter of the claim of a patent. *Rich Products Corp. v. Mitchell Foods, Inc.*, 357 F.2d 176, 180 [2nd Cir. 1966]. And the subject matter of a patent claim is not anticipated or rendered obvious by the disclosure of a prior publication if such person must experiment in order to attempt to build a machine in accordance with such disclosure. *Allied Research Products Co. Inc. v. Heatbath Corp.*, 300 F.Supp. 656 [N.D.Ill.1969].

The *Erie Times* article of January 10, 1960, is a printed publication appearing more than one year prior to the filing date of the Shepardson parent application of March 30, 1961. As a prior publication it does not meet the test of *Seymour v. Osborne*, supra. We do not regard the absence of pictures, photo-

graphs or drawings, as mentioned in *Seymour v. Osborne,* to be fatal if the verbal description is otherwise adequate but we do not find the verbal description sufficient to enable a person to duplicate the machine described in the patent. The *Erie Times* article describes the machine as experimental and while it describes the "shaking" effect it does not describe the multi-spoked hub which enables the invention in question to penetrate and travel along the grapevines underneath the trellis wire to provide the shaking effect which is the essential feature of the patent in question. However, the *Erie Times* article, while not meeting the test of a prior publication under § 102(b) of the statute, may still be considered as part of the prior art.

*The Grape Belt* newspaper article of March 3, 1960, is a printed publication having a date more than one year prior to the filing date of the parent application for the patent in question here. *The Grape Belt* article does not have drawings or photographs but does contain a verbatim account of a manuscript report prepared by Professor Shepardson and his colleagues for future publication in complete form with photographs and drawings. From our examination the quoted report of Professor Shepardson and his colleagues in the *Grape Belt* article is identical with the text of the printed article in the *Proceedings* of the 105th Annual Meeting of the New York State Horticultural Society in 1960, except that the *Grape Belt* article does not contain the three photographs which are contained in the Horticultural Society publication.

While the plaintiffs have objected to the admission of the *Proceedings* of the 105th Annual Meeting of the New York State Horticultural Society of 1960 as a prior publication because the printed book of the *Proceedings* offered into evidence contains no indication of the date of its publication and distribution, we believe that the publication date of the

identical text in the *Grape Belt* on March 3, 1960, establishes a firm date of publication. Furthermore, in Interference Proceeding No. 95,578 when the patent in question was subject to an interference proceeding, the inventor Shepardson filed an affidavit with the patent office sworn to on October 25, 1966, that the first date upon which the first written description of the invention was made was on or about January 19, 1960, in a paper which was read to the 1960 meeting of the New York State Horticultural Society, a copy of which is attached to the affidavit and which is identical in text to the *Grape Belt* article and the article in the 1960 *Proceedings* of the Horticultural Society.

*The Grape Belt* and the 1960 Horticultural Society articles, after describing the impracticality of a vibrating clamp firmly attached to the trellis wire to shake the grapes, continues with the following description:

> "The system now used is a continuously vibrating, rotating spiked wheel, which is positioned under the trellis wire. The rotation of the spiked wheel is brought about through vine contact as the machine moves along the row. The fruit is collected in a collector-conveyor carried under the vine curtain." (pg. 1, col. 3, pg. 8, col. 1).

Plaintiff argues with respect to the article in *Grape Belt* (and thus as to the 1960 *Proceedings* of the Horticultural Society) that the article does not meet the printed publications standards of *Seymour v. Osborne* in that it does not disclose a spike of a spiked wheel as being generally horizontal as required by Claim 1, or that the spike is arranged close to the level of the trellis wire as required by Claim 1, nor means for moving the spike transversely of itself as required by Claim 1, nor that the direction of vibration is upwardly as required by Claim 2, nor that the hub has at least four arms as required by Claim 6. It ap-

pears to us that these requirements of the various claims must be self-evident if the machine is to operate in the manner generally described in the two published articles. The spiked wheel must be generally horizontal in order to lift the trellis wire which is a horizontal wire and in order to rotate as it passes along the row of vertical vines. It must of necessity be close to the trellis wire, and if it is to shake the trellis wire it must vibrate vertically. Defendants' expert, Crankshaw, testified that the disclosures of the *Grape Belt* article made obvious to a person skilled in the arts the elements of Claims 1, 2 and 5 of the patent. As to Claim 6, which requires that the hub has at least four arms, Crankshaw testified that while the *Grape Belt* article does not disclose a specific number, it is nevertheless obvious that if the piked wheel is to be rotated by contact it should have sufficient spokes so that the new spoke entering has in fact begun to enter before the leaving spoke has in fact left the vine. Two spokes would not accomplish this and it is obvious that at least four spokes would be required.

Claim 8 of the patent in question describes a bar means which enters the curtain of canes at an acute included angle to the horizontal and slopes downwardly toward its end. This projection into the curtain of canes tends to lift the curtain of canes being harvested.

To us the import of this claim is that the spoke of the spiked wheel is tapered. Defendants' expert Crankshaw testified that the *Grape Belt* article referred to a "spiked wheel" and that the term spike means something that is tapered along its length to a point. It thus appears to us that a tapered spoke would be obvious.

We, therefore, find that with respect to the state of the prior art Claims 1, 2, 5 and 6 of the patent in question are obvious.

Claim 11 of the patent requires that the gathering and transporting means of the machine includes inner and outer walls arranged generally parallel with the line of movement of the machine and which are spaced from each other to form a way through which the said curtain of canes being harvested passes and which contains said bar means. Claim 12 adds that the wall is arranged on the trunk side of said curtain as upper and lower portions between which the trunks of the vines pass. Claim 11 of the patent in question reads on the original disclosure and is entitled to the protection of its filing date. The inner and outer side walls which form a trough through which the falling grapes are conducted to the conveyor belt are clearly shown in Figures 1 and 2 of that application. However, the parent application does not disclose that the wall on the trunk side of the curtain of canes has upper and lower portions ʹbetween which the trunks of the vines pass as set forth in Claim 12 and therefore this claim is subject to attack for obviousness or by reason of publication prior to April 16, 1964, one year before the date of the patent in question. The *Grape Belt* article states that the fruit is collected in a collector-conveyor carried under the vine curtain. Plaintiffs argue that this does not eliminate the positioning of the collector-conveyor transversely to the line of movement of the machine or some other disposition wherein the walls would not be generally parallel to the line of movement of the machine. The witness Crankshaw testified that it would have been obvious to dispose the conveyor belt and therefore the side walls of the collector along a line parallel to the trellis wire of the grapes or the line of movement of the machine.

Claim 12 of the patent in question depends upon Claim 11 and recites that the wall which is arranged on the trunk side of the curtain of canes has upper and lower portions between which the trunks of the vines pass. This is not revealed in the *Erie Times* article or the

*Grape Belt* article and does not read on the original disclosure. It would only be invalid by a publication or by obviousness of the state of the art before one year prior to the filing date of the patent in question, April 16, 1965.

Our examination of the *Grape Belt* article does not reveal the teaching of the upper portion of the wall of the trough nor do we find reference to it in the 1961 *Proceedings* of the New York State Horticultural Society. A reference to the problem appears in the article in *Agricultural Engineering,* February 19, 1962 issue by the inventor and his colleagues (Studer, Shaulis and Moyer) in that on page 68, column 1 of said article, the following description appears:

> "The outer wing (and its nose piece) must be flexible so that it can yield, when vine and post obstructions are hit, and then return to its initial position."

The photograph of the 1961 experimental model appearing as figure 2 on page 67 of the *Agricultural Engineering* article shows a view of the outer wall but does not show it arranged in upper and lower portions so that the trunks of the vines can pass between them.

This is a clear publication prior to April 16, 1964.

The Studer thesis discusses the problem of berries separated from the clusters of grapes having velocities imparted to them which caused them to be thrown over the conveyor wings with attendant losses. It continues "in order to reduce these losses, the height of the left wing on the conveyor was increased to 70 inches from the ground. This resulted in little or no loss occurring on that side. The front of the conveyor and the right wing were fitted with deflectors to accomplish more effective channeling of the vines." [DX 15, p. 14]. The defendants' expert, Mr. Crankshaw, testified that it would have become apparent to an operator of the machine to erect such an upper wall to prevent the loss of fruit whether it was decided to do so in the initial design of the harvester or whether it was done after the harvester had been placed in operation and the spill-over was apparent to the operator. It is, therefore, obvious.

Claims 14 and 15 were clearly not disclosed in the parent application. The effective date of the bar of prior publication would be prior to April 16, 1964. Claim 14 calls for a hub freely rotating about a generally upright axis in such position that its arms (the tapered spikes of Claim 8) enter endwise into the side of the curtain below the longitudinal trellis wire whereby the entering elevation of the outboard ends is lower than the tearing elevation so that the entering arms contact the trellis wire and lift it. This is accomplished by having the axis of the hub at an acute included angle with the vertical. Claim 15 reads on Claim 14 with the acute included angle being in the order of about 30°. Figure 3 of the patent shows this application and Figure 7 shows the hub and the angle of its axis in detail.

The plaintiffs refer to this as the tipped axis claim and recite that the axis of the hub is not only tipped downwardly toward the curtain of canes but also tipped downwardly toward the rear of the harvester.

Defendants assert that this claim is obvious in view of the prior art as revealed by the *Agricultural Engineering* article and the Studer thesis.

Figure 3 (p. 67) of the February 1962 article in *Agricultural Engineering* is a drawing of "Essential Elements of the Cornell Grape Harvester." The spokes of the spiked wheel are shown as tipped down in front and up at the rear by a tilt in the axis of the vertical hub toward the rear of the machine. The angle of tilt is shown as 5°. A photograph designated as Figure 3 (p. 252) of the 1960 *Proceedings* shows "close up of the spiked wheel vibrator" which also shows a noticeable tilt toward the rear. One of the authors of the *Agricultural Engi-*

*neering* article, along with the inventor, was H. E. Studer and the Studer master's thesis of February 1962 at Cornell University shows as Figure 5 (p. 11) the identical drawing as Figure 3 of the *Agricultural Engineering* article, showing the tilted axis of the spiked wheel at 5°. Studer describes the reason for the tilt:

> "The spiked wheel was originally designed so that the spokes lay in a plane parallel with the ground. In regions of high negative slope of the trellis wire, this resulted in the spokes rotating from beneath the wire to the top of the wire, with resultant loss of wire contact. An inclination of the spoke plane of five degrees to the horizontal reduced the frequency of the contact loss." (p. 12)

So far these references only concern a tilt in a single direction. There is no mention of a tilt tipping downwardly toward the curtain of canes.

Crankshaw testified that the function recited by Claim 14 is that the outboard ends of the spikes enter the curtain of canes at a lower elevation than in leaving so that they come in contact with and lift the horizontal trellis wire. This function is performed by the downward tilt of the axis to the rear, as shown in Figure 3 of the *Agricultural Engineering* article. Thus the downward tipping of the axis toward the curtain secures no new or beneficial results and therefore cannot serve as the basis of patentability. *Great A & P Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 [1950].

While Figure 3 and Figure 7 of the patent show a conically shaped spiked wheel this is not recited in Claim 14 and, therefore, any benefits from the use of this design cannot support an argument that Claim 14 is unobvious.

Studer explains the use of a spiked wheel tilted downwardly toward the curtain of canes in another context. The spiked wheel which is described in the various claims to which we have referred above is the shaker unit which vibrates the longitudinal trellis wire to separate the grapes from the vine. At page 46 of his thesis, Studer recites:

> "If the trellis wire were to be lifted up to the level of the spiked wheel as the machine moved down the row, there would be no need for automatic vertical positioning of the shaker unit."

After reciting the benefits to be achieved by lifting the trellis wire, he continues:

> "A device which might accomplish the lifting of the vines is depicted in Figure 21. The unit would be free to rotate about an inclined axis lying in a plane perpendicular to the ground. The spokes would move into and lift the vines to the desired height, then move out of and away from the vine. It would rotate due to the force of the vines pressing against it.
>
> With one such device placed on either side of the spiked wheel, the trellis wire motion would be confined for the most part to the space between them, the reels damping out most of the motion beyond them."

Figure 21 shows a spiked wheel of six spokes rotating about a hub, the axis of which is set at a 45° angle to the horizontal. The conformation of this device is also conical as is the drawing of the spiked wheel shown in Figures 3 and 7 of the patent in question.

Crankshaw testified that it would not be unobvious to use the design illustrated in Studer's thesis Figure 21 as the vibrating shaking wheel. It was tried by Studer under Shepardson's direction as a vine lifter wheel but discarded for that use because it became entangled in the vines. The prior publications illustrated a tilt in the axis of 5° to the rear. The Studer suggestion of a 45° tilt downward toward the vines would make it not unobvious, according to Crankshaw, for one skilled in the art to experiment to determine the optimum angle of tilt, and the 30° angle recited in Claim 15 would not be an unobvious angle to use.

Fig. 7 and Fig. 8 of the patent illustrate these items.

April 30, 1968     E. S. SHEPARDSON     3,380,236

APPARATUS FOR HARVESTING GRAPES

Filed April 16, 1965          5 Sheets—Sheet 3

Fig. 3.

Fig. 4.

Fig. 5.

Fig. 6.

Fig. 7.

VIEWED FROM REAR OF MACHINE

Fig. 8.

VIEWED FROM RIGHT HAND SIDE OF MACHINE

SHAKE

TRAVEL

If we reject the Studer thesis as a prior publication because the date of its availability in the Cornell University Library is not established, we must consider the thesis in another aspect. We have previously noted that the presumption of validity is destroyed where relevant prior art was not considered by the patent office. However, such a great quantity of the prior art was not disclosed to the patent office in this case that we must carefully examine whether there was an intentional withholding of material facts from the Patent Office.

The plaintiff only cited two patents, the Tubbs Patent, No. 2,993,323 and the Lamouria Patent, No. 2,893,194.

Yet at the time of the parent application the inventor had reason to know of the following:

His student, Padget, had completed a thesis for a Master's degree, under his supervision, which thesis was deposited in the Cornell University Library system, in the Mann Library, of the College of Agriculture of the University. Professor Shepardson is familiar with this library. He knows that there is a card index system for everything deposited there, and a university-wide index system. The copy of the thesis supplied as an exhibit contained a copy of the index card, and the binder of the thesis contained cataloguing references. The thesis was found there by Mr. Mark Lewis. He secured a copy by a request forwarded through the Erie Public Library. Mr. Shepardson cited the Padget thesis in his references at the end of his paper delivered at the 105th *Proceedings* of the New York State Horticultural Society in January 1960; again in his references in the 106th *Proceedings* in January 1961, and again in his article in *Agricultural Engineering* in February 1962.

Shepardson had delivered a paper in January 1960 to the 105th Proceedings of the New York State Horticultural Society. The manuscript was typewritten. Each year's *Proceedings* is printed in a bound volume. The bound volume printed the full text of the paper, with bibliographic references, and photographs. The identical text (without photographs or bibliography) appeared in a printed newspaper article in the *Grape Belt*, a periodical circulated in the area where the machine was intended to be used, on March 3, 1960.

The following year Shepardson again appeared in January 1961 at the 106th meeting of the New York State Horticultural Society and delivered another paper detailing later developments, and referring to the former article. It was also published, with photographs and bibliography.

In February 1962, an article by Shepardson and others, including H. E. Studer, appeared in the journal *Agricultural Engineering*, a technical magazine of agriculture. This article also contained photographs and diagrams, and referred in its bibliography to the Studer thesis which was expected to be published in June of 1962.

H. E. Studer was a candidate for the Master's degree in the School of Agriculture; studying under Shepardson's supervision. His thesis, which had also been found in the Cornell Library by Mr. Lewis through the card indexing system, and a copy was secured by defendants through the Erie Public Library.

Putting aside the question of prior publication, and the effective dates of such publication, and the argument that a typewritten manuscript deposited and indexed in the library of a major university is not a "printed publication" under Sec. 102(b), we find a more compelling reason to consider these items.

While we can accept Shepardson's testimony that he was unaware of the publications in the newspapers, the *Erie Times-News* and *The Grape Belt*, it is impossible to escape the conclusion that the failure to disclose the other publications which he authored, or the research theses which he supervised, to the Patent Office as part of the pertinent prior art is sufficient to render all

of the claims invalid, even though some might otherwise be valid.

■ 35 U.S.C. § 253 and § 288 preserve valid claims, despite the invalidity of other claims, if the invalid claims were made without "deceptive intention". "Deceptive intention" is more than mere technical fraud, as might be revealed by a finding of obviousness, and requires actual fraud or other inequitable conduct. *Walker Process Equip. Inc. v. Food Machinery & Chem. Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 [1965]; *Kearney & Trecker Corp. v. Giddings & Lewis, Inc.*, 452 F.2d 579 [7th Cir. 1971].

Shepardson was a co-author of all of the printed articles appearing in the technical journals. He knew of their publication. Each publication contained a bibliographical reference to prior publications on the subject. He supervised the graduate students who reported on his research in master's theses deposited in the Cornell Library system. The titles of the publications *"Grape Harvesting Research at Cornell"; "Grape Harvesting Research at Cornell-II"; "Mechanical Grape Harvesting"*, and the indexed title of the theses all contain a clear reference to the subject matter of the patent application.

In *Strong v. General Electric Co.*, 434 F.2d 1042 [5th Cir. 1970], the court rejected the argument under Sections 253 and 288 that some claims may stand even though others are invalid by stating:

"[T]hose sections apply to invalid claims which are made inadvertently or by mistake and which are promptly disclaimed." (p. 1046)

"The court also finds that the *Electrical South* publication was published with Mr. Strong's knowledge, if not at his request, so that his failure to include that publication as part of the prior art to be considered by the patent office invalidates all claims in the patent even if some of those claims otherwise would have been patentable." (p. 1045)

In *Strong* the printed description did not mention certain of the elements described in one of the claims, and the court held that it could not assume they were included in the publication. However, the court did find that the description was sufficiently clear to enable one reasonably skilled in the art to reproduce it and that the product so produced would have been the same meter box for which the patent was issued in 1961.

In *Monsanto Company v. Rohm & Haas*, 456 F.2d 592 [3rd Cir. 1972] the court of appeals held a patent invalid for failure to disclose based on the failure to disclose the full extent of the experimental work of the applicant. The patent in question in that case was the result of a third application, after two prior rejections. The third application was initially rejected by the Patent Office as obvious under the prior art until the applicant submitted an affidavit based on certain test results, which showed less than 25% of the tests conducted. The Court of Appeals found that:

"[C]oncealment and non-disclosure may be 'evidence of and equivalent to a false representation, because the concealment or suppression is, in effect, a representation that what is disclosed is the whole truth'. *Stewart v. Wyoming Cattle Ranch Co.*, 128 U.S. 383, 388–89, 9 S.Ct. 101, 32 L.Ed. 439." 456 F.2d at p. 599.

The Court of Appeals cited the doctrine laid down in *Precision Co. v. Automotive Company*, 324 U.S. 806, 816, 65 S.Ct. 993, 89 L.Ed. 1381, that "the circumstances surrounding the application for the patent to be 'free from fraud or other inequitable conduct' ".

The Court of Appeals found that the inventor's success in gaining a patent on his third application, originally rejected by the examiner and later accepted after the presentation of the test reports, was attributable to the fact that the report of tests submitted "permits, if not compels, the misleading inference that it constituted an accurate analysis

of all the testing instead of the edited version thereof."

In the case at bar we have the testimony of Patent Examiner Stone, who examined the Shepardson application, that he would not have permitted the claims of the Shepardson application to issue in the form that he did if he had been aware of the *Studer* thesis, the *Padget* thesis, the *Grape Belt* article, and the *Erie-Times News* article. Stone further testified that he would have considered the *Studer* thesis to be a reference as of the date appearing on the cover page of the thesis.

After this lawsuit was initiated, Plaintiffs disclaimed several of the claims of this patent. It appears that the claims disclaimed would have been those disclosed by the *Agricultural Engineering* article of February 1962 or the *Studer* thesis of 1962. These publications did not appear before the parent application but they did appear prior to the CIP application and discloses matters contained in the CIP application.

In *Strong v. General Electric,* cite supra, the requirements for the application of Sections 253 and 288 are that the invalid claims which do not render all claims invalid must be those "made inadvertently or by mistake and which are promptly disclaimed."

This undisclosed prior art would have been brought to the attention of the applicant during the pendency of the application when he filed an affidavit in the interference proceeding identical in content to the paper published in the bound volume of the 1960 *Proceedings* of the New York State Horticultural Society.

■ We do not find the failure to disclose such an important body of prior art authored or supervised by the inventor to be inadvertent. Likewise, the long history of the present patent, and the interference contest raised, does not make a disclaimer filed after litigation commenced, a "prompt disclaimer" in our opinion.

There has been no testimony from the inventor as to why these pieces of pertinent prior art were not brought to the attention of the Patent Office.

We, therefore, conclude that the failure to disclose the prior art was deliberate on the part of the applicant, that the undisclosed prior art was material, and that the Patent Office was in fact misled by the failure to disclose, and that the disclaimer of the invalid claims were not promptly made.

■ We, therefore, find from the evidence that defendant has met its burden of proof; the presumption of validity of the patent in question has fallen because of failure of the Patent Office to consider the pertinent prior art; that all claims except Claims 14 and 15 are invalid by reason of prior publication under Sec. 102(b), or obvious in the light of the prior art under Sec. 103 of Title 35 U.S.C.

We also find that Defendant has met its burden of proving by clear and convincing evidence that all remaining claims of the patent in question, not invalid by virtue of prior publication or obviousness in the light of the prior art, are invalid by reason of deliberate failure of the applicant to disclose pertinent prior art, which non-disclosure was material and did in fact mislead the Patent Office in its approval of the application in question.

## ORDER

And now, this 17th day of July, 1975, upon this matter heard by the court, and upon consideration of the evidence, and arguments and briefs of counsel, it is

Ordered that judgment be and hereby is entered for defendants and against plaintiffs, and that United States Patent 3,380,236, issued April 30, 1968, to Edwin Stanley Shepardson be hereby declared invalid. Each party to bear its own costs.

The foregoing Opinion shall constitute the findings of fact and conclusions of law in the within case.