**LEWIS MANUFACTURING COMPANY, INC.**

v.

**CHISHOLM–RYDER COMPANY, INC.**

Civ. A. No. 79–8 ERIE.

United States District Court,
W. D. Pennsylvania.

July 3, 1979.

Andrew J. Conner, Erie, Pa., for plaintiff.

William J. Kelly, Kenneth G. Vasil, Erie, Pa., for defendant.

## OPINION

WEBER, Chief Judge.

In its present antitrust Complaint, Lewis Manufacturing Co. (Lewis) contends that Chisholm-Ryder Company, Inc. (Chisholm-Ryder) effectively precluded it from competition in the market for grape picking machines in 1968–1978 by trying to enforce rights under U. S. Patent No. 3,380,236 which Chisholm-Ryder allegedly knew had been obtained by fraud and misrepresentation to the patent office. In an earlier case which Chisholm-Ryder brought against Lewis for patent infringement, this Court found that all claims of the patent in ques-

tion, except claims 14 and 15, were invalid in the light of prior art, by reason of prior publications, or obviousness. As to the remaining claims, the Court found them invalid by reason of the deliberate failure of the applicant to disclose pertinent prior art, which nondisclosure was material and did in fact mislead the patent office in its approval of the patent in question, see *Chisholm-Ryder Company, Inc. and New York State Concord Grape Production Research Fund, Inc. v. Lewis Manufacturing Company, Inc., Leo J. Lewis, William L. Lewis, Mark Lewis, and Lewis Manufacturing Company,* Civil Action No. 47–69 Erie, decision reported at 398 F.Supp. 1287 (W.D.Pa.1975), *affirmed* 547 F.2d 1159 (3d Cir. 1977), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1978).

Chisholm-Ryder has filed a motion to dismiss the instant case under Fed.R.Civ.P. 12(b) which contends that Lewis's complaint fails to state a cause of action upon which relief may be granted. Although Chisholm's motion sets out a panoply of issues, our resolution of the motion requires consideration of only two: (1) was Lewis's 1972 Counterclaim in the earlier suit compulsory; and (2) whether Chisholm-Ryder's prosecution of appeals from the Court's opinion in Civil Action No. 47–69 Erie gives rise to causes of action under the antitrust laws and the law of unfair competition.

Discussion of the first issue, whether the 1972 counterclaim was compulsory, requires a brief review of elements of the lawsuit at 47–69 Erie which Chisholm filed against Lewis on June 3, 1969 for patent infringement. On July 15, 1969, Lewis filed an answer to Chisholm's amended complaint which alleged, as an affirmative defense, that:

20. Defendant, upon information and belief, avers that plaintiffs, contrary to law, have engaged in a misuse of the Shepardson Patent, the purpose and effect of which was and is to tend to create a monopoly or restrain competition in interstate and foreign commerce, and fix prices in inter-commerce, and/or which constitutes an unlawful misuse and ex-

tension of plaintiffs' rights under Patent 3,380,236 by threatening to sue the customers of defendant, and brought said suit against defendant well knowing that Patent 3,380,236 is invalid. The Shepardson Patent is, therefore, unenforceable against defendant.

On January 10, 1972, Lewis moved to amend an earlier filed counterclaim which sought declaratory judgment on the issue of patent validity to include allegations that Chisholm's conduct in suing or threatening to sue for patent infringement violated the antitrust laws and the common law of unfair competition. Lewis attached to its Motion to Amend Counterclaim a copy of the proposed counterclaim. The claims Lewis set forth in the proposed counterclaim are essentially the same claims which it raises in its Complaint in the instant case, with the exception that the present Complaint alleges that Chisholm-Ryder's prosecution of the appeal of the Court's opinion at 47–69 Erie also violated the antitrust laws and the common law of unfair competition.

Lewis filed its proposed amended antitrust counterclaim on January 10, 1972 after all pretrial narratives were filed and after the pretrial conference at which the trial of the case at Civil Action No. 47–69 Erie was scheduled for January 31, 1972. Lewis's motion to amend its counterclaim was neither granted nor denied by formal written order. Rather, because it was filed so close to the time of trial, the Court chose to treat the proposed antitrust counterclaim as a motion to conform the pleadings to the evidence under Fed.R.Civ.P. 15(b). In its Motion to Amend, Lewis represented that:

The facts which have been developed relative to the counts of the lawsuit will prove a violation of the Clayton-Anti-Trust Act and also unfair competition by Plaintiffs against Defendants.

(Lewis's Motion to Amend Counterclaim, filed January 10, 1972, Civil Action No. 47–69 Erie).

The trial of the case at 47–69 Erie began on January 31, 1972 and considered all liability issues. At the close of the Lewis's case in chief, Mr. Sommer, Chisholm's coun-

sel moved for dismissal of the antitrust counterclaim.

> MR. SOMMER: I understand that the defense has rested. I would like to move under Rule 41(c) for a dismissal of the anti-trust counterclaim, and the unfair competition counterclaim, and the answer of the defendants.
>
> THE COURT: The Motion for Leave to Plead those was not acted upon.
>
> We would see what the evidence may have produced to support those; that is, treat them, possibly, if within the evidence presented at trial there had been evidence to support those, we would have allowed the amendments. But no attempt has been made. It was certainly a late filing. It was much after the pre-trial hearing.
>
> We will take those under advisement. I will determine the matter on the whole record. Trial Transcript, pp. 685–86.

As the transcript indicates, the Court was willing to consider Lewis's antitrust allegations if the produced evidence supported them. Our examination of the record after the non-jury trial failed to reveal evidence satisfying the elements of an antitrust cause of action. The post-trial briefs and arguments discussed the issues of patent validity and infringement, and did not even raise the antitrust counterclaim. In fact, the defendant moved to reopen the record after the conclusion of the trial for the purpose of presenting further evidence on the question of prior publication. Further, Lewis did not prosecute the antitrust counterclaim in the 6½ year period between the trial and Lewis's Motion under Rule 60 Requesting the Right to Proceed on the (Antitrust) Counterclaim which was filed October 4, 1978 and denied November 24, 1978. In this 6½ year period, judgment was entered, the Court of Appeals affirmed the Court's opinion, and Chisholm-Ryder's petition for certiorari was denied.

The first issue is whether Lewis's 1972 antitrust and unfair competition counterclaim is compulsory or merely permissive. If compulsory, Lewis may not bring a separate cause of action based upon the same allegations set forth in the 1972 counterclaim and those aspects of the Complaint which do so must be dismissed. Fed.R. Civ.P. 13(a) states:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim
>
> . . .

Professor Moore tells us that the compulsory counterclaim rule should be interpreted broadly to further judicial economy by avoiding several suits where one would do, 3 Moore's Federal Practice ¶ 13.13 at p. 13–300. The test applied in determining whether a counterclaim is compulsory is recited by the Court of Appeals in *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057 (3d Cir. 1978) where the court stated:

> ■ *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961), established that the operative question in determining if a claim is a compulsory counterclaim is whether it bears a logical relationship to an opposing party's claim.
>
> "[A] counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently."

Thus a detailed analysis must be made to determine whether claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy be-

tween the parties. The *Great Lakes* analysis has been generally used by several federal courts as was noted by the Supreme Court in *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974). 576 F.2d at 1059.

*Xerox* emphasized the difficulty of extracting from the cases a universally applicable rule for determining compulsory counterclaims, 576 F.2d at 1060, and the controlling importance of the particular facts of the case. We believe this view is especially appropriate in the context of the case at bar, unique in its facts and procedural history from any case cited by the parties in their briefs.

Sued for patent infringement in 1969, Lewis moved to file, but never prosecuted, a counterclaim which alleged that the very act of bringing the patent infringement suit was a harassing tactic which discouraged competition and violated the antitrust laws. As indicated by Lewis's own pleadings, key factual issues were common to both Chisholm's patent infringement action and Lewis's antitrust counterclaim. The essence of Lewis's counterclaim was Chisholm's actions in securing its patent, which rendered its patent invalid, also resulted in an impermissible monopoly of the grape harvesting machine market. Enumerated in Lewis's proposed antitrust counterclaim, these actions, which in turn presented issues of fact similar to those presented in the patent infringement action, include: (1) securing a patent by withholding prior art from the Patent Examiner; (2) claiming the idea of vibrating grape trellis lines to detach grapes, well-knowing that the inventor's own prior publication described the idea; (3) submitting as the first written description of the invention a carbon copy of a talk published by the inventor in a newspaper over a year before the first patent application was filed; and (4) withholding from the Patent Examiner that a written description of the invention had appeared years earlier in a prominent agricultural engineering periodical. All of these allegations, as well as the others listed in the Lewis's proposed counterclaim, present factual issues common to the legal issue of patent validity presented by Chisholm's patent infringement action. In fact, Lewis virtually admitted that the anti-trust counterclaim was compulsory when it represented to the Court in their motion for leave to file the antitrust counterclaim that:

> The facts which have been developed relative to the counts of the lawsuit will prove a violation of the Clayton Anti-Trust Act and also unfair competition against Defendants.

(Lewis's Motion to Amend Counterclaim, filed Jan. 10, 1972, p. 1, C.A. 47–69 Erie).

Because of its close identity of factual and legal issues with those presented by the patent infringement action, Lewis's antitrust counterclaim is "logically related" under the tests set forth in *Great Lakes Rubber Corp.* and *Xerox*, and thus must be viewed as a compulsory counterclaim to Chisholm's patent infringement action. Accordingly, the considerable aspects of the Complaint in the instant case which track the proposed counterclaim's antitrust allegations must be dismissed.

We find strong support for this finding in *United Artists Corp. v. Masterpiece Productions, Inc.*, 221 F.2d 213 (2d Cir. 1955), where the court held compulsory a counterclaim alleging that the plaintiffs conspired to deprive defendants of their rights in order to cement plaintiff's control in the corporation where the plaintiff brought an action for copyright infringement and unfair trade practices. The court found a sufficient logical relationship between the counterclaim and the plaintiffs' action for copyright infringement because the defendants, like Lewis in the case at C.A. No. 47–69 Erie, claimed that the plaintiff's lawsuit was "one of a series of harassing maneuvers designed to interfere with defendants' proper exploitation of (their) rights . . . ." 221 F.2d at 216. *Compare Xerox Corp. v. SCM Corp., supra,* at 1060 (patent infringement action brought in New Jersey was not a compulsory counterclaim to Connecticut antitrust action where antitrust action did not present issues of patent validity

and infringement); *see also Koufakis v. Carvel*, 425 F.2d 892 (2d Cir. 1970).

Lewis would have the Court apply here the holding *Mercoid Corp. v. Mid-Continent Invest. Co.*, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944), namely, that in a patent infringement suit, a counterclaim under Section 4 of the Clayton Act for monopoly expansion of the patent was a permissive counterclaim not barred in a later suit. *Mercoid's* facts, however, are critically different from those of the case at bar. Mid-Continent sued Mercoid for patent infringement and Mercoid filed an anti-trust counterclaim. Moving to dismiss the counterclaim, Mid-Continent argued that the counterclaim should have been raised in an earlier suit Mid-Continent filed against a third party, for whom Mercoid provided the defense. In C.A. 47–69 Erie, Lewis was a named defendant which provided its own defense and is therefore different from Mercoid which was only defending a third party in the earlier action. This factual difference, persuasive to Professor Moore, requires us to distinguish *Mercoid* from the instant case, see 3 Moore's Federal Practice ¶ 13.13 n.22 at pp. 13–306–07 (2d ed. 1978); see also C. Wright & A. Miller, 6 Federal Practice and Procedure § 1412 at pp. 61–67 (1971) (*Mercoid* criticized in detail).

The reasoning supporting our distinction of *Mercoid* was suggested by the Court of Appeals in *Zion v. Sentry Safety Control Corp.*, 258 F.2d 31 (3d Cir. 1958), which involved diversity actions filed by law partnerships against a corporation for unpaid legal fees. The corporation moved to dismiss the action on the ground that they both involved claims which were properly compulsory counterclaims in an earlier action filed by the corporation against a certain law partner for breach of fiduciary duties as counsel and director of the corporation. Without disturbing the holding of the district court that the counterclaim was compulsory because the requisite logical relationship existed, the court held that a second requirement existed which was not satisfied: that the counterclaim was one that the pleader himself had. The claim for unpaid legal fees belonged to the law part-

nerships and not to any particular partner, and accordingly the fee claims could not be compulsory counterclaims in a suit involving only a single partner as defendant. Such was the case in *Mercoid* also, where Mercoid, providing only a defense for a third party could not be required to plead an antitrust counterclaim which belonged only to the third party. In the instant case, however, the 1972 counterclaim belonged to Lewis in the full sense. Lewis was a party in the earlier case and should have prosecuted its antitrust counterclaim fully at that time when it had a full opportunity to do so.

We hold that the 1972 antitrust counterclaim was a compulsory counterclaim under Fed.R.Civ.P. 13(a) and that Lewis is barred from prosecuting these antitrust claims as a separate action. Although the compulsory counterclaim rule is our primary basis for dismissing those claims covered by the 1972 counterclaim, Chisholm-Ryder brings forth others with merit. Chisholm-Ryder contends, and we agree, that the allegations of the instant case set forth in the 1972 counterclaim should be dismissed because Lewis failed to prosecute those claims in post-trial briefs after the court indicated it would examine the record for evidence supporting the antitrust counterclaim, *see Link v. Wabash Railroad Co.* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Marshall v. Sielaff*, 492 F.2d 917 (3d Cir. 1974); *Dyotherm Corp. v. Turbo Machine Co.*, 392 F.2d 146 (3d Cir. 1968); *see generally* 5 Moore's Federal Practice ¶ 41.11[2] at 41–117 (2d ed. 1978). We see no moment to the fact that Chisholm-Ryder moves for dismissal for failure to prosecute under a different cause of action number when Lewis admits the claims are the same.

The second issue concerns Lewis's allegations that Chisholm's motion for reconsideration of the district court's findings, appeal of the court's opinion to the Court of Appeals and petition for a writ of certiorari precluded Lewis from entering the grape harvesting machine market until 1978.

Lewis attempts to fashion these allegations into an antitrust cause of action under *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), that enforcement of a patent procured by fraud may violate the antitrust laws. Concurring, Mr. Justice Harlan elaborated the Court's holding as follows:

We hold today that a treble-damage action for monopolization which, but for the existence of a patent, should be violative of § 2 of the Sherman Act may be maintained under § 4 of the Clayton Act if two conditions are satisfied: (1) the relevant patent is shown to have been procured by knowing and willful fraud practiced by the defendant on the Patent Office or, if the defendant was not the original patent applicant, he had been enforcing the patent with knowledge of the fraudulent manner in which it was obtained; and (2) all the elements otherwise necessary to establish a § 2 monopolization charge are proved. Conversely, such a private cause of action would not be made out if the plaintiff: (1) showed no more than invalidity of the patent arising, for example, from a judicial finding of 'obviousness,' or from other factors sometimes compendiously referred to as 'technical fraud'; or (2) showed fraudulent procurement, but no knowledge thereof by the defendant; or (3) failed to prove the elements of a § 2 charge even though he has established actual fraud in the procurement of the patent and the defendant's knowledge of that fraud. 382 U.S. at 179, 86 S.Ct. at 351.

■ In evaluating whether a complaint states a cause of action, the district court must ordinarily accept the plaintiff's allegations as true. In this case, however, the Court has the advantage of a close familiarity with the proof of Lewis's allegations of patent fraud by virtue of having presided at the non-jury trial at Civil Action No. 47–69 Erie.

■ We note that, although the Complaint alleges antitrust violations arising after the Court's opinion was filed and obviously unavailable to Lewis at the time of trial, factual issues critical to Lewis's antitrust action for wrongful patent enforcement were resolved with finality in the litigation of C.A. 47–69 Erie. Collateral estoppel prevents Lewis from reproving in the instant case issues of fact already resolved at C.A. 47–69 Erie. See 1B Moore's Federal Practice ¶ 0.441[2] at 3775–80 (2d ed. 1974). These issues include whether Chisholm-Ryder enforced the patent with bad faith in the knowledge that it had been fraudulently obtained.

The proof adduced in the 1972 trial failed to establish that Chisholm-Ryder, which was not the original patent applicant, enforced the patent with knowledge that it was fraudulently obtained. At the trial of C.A. 47–69 Erie, Lewis was obliged to show that the original patent applicant used knowing and willful fraud to obtain the patent. Although the evidence supported findings that the allegedly infringed patent was invalid for obviousness, prior publication, and other factors subsumed in the phrase "technical fraud", Lewis failed to prove that the original patent applicant obtained the patent by practicing "knowing and willful fraud" as required by *Walker Process*, supra, 382 U.S., at 176–77, 179, 86 S.Ct. 347, even though the parties agreed that such was a "contested issue of law" in their Pretrial Stipulation, pp. 28–30 (filed June 9, 1971).

In addition, the evidence failed to show that Chisholm-Ryder knew that the patent had been obtained by "knowing and willful fraud", instead of mere "technical fraud", when it threatened patent infringement litigation. The parties plainly acknowledged that the extent of Chisholm-Ryder's knowledge of representations made to the patent office and its intentional fraud, if any, in threatening and bringing patent litigation presented contested issues of fact and law to be resolved at the trial of C.A. 47–69 Erie, *see, e.g.*, Pretrial Stipulation, pp. 11, 22, 26, 28, 29, 30; Plaintiff's Proposed Findings of Fact and Conclusions of Law, pp. 10, 19 (filed July 23, 1975); Defendant's Proposed Findings of Fact and Conclusions of

Law, pp. 13, 18, 19 (filed July 23, 1975). Nevertheless, the evidence failed to attribute knowledge of representations made to the patent office to Chisholm-Ryder. Accordingly, under the doctrine of collateral estoppel, Lewis cannot now prove a cause of action for wrongful patent enforcement under *Walker Process* since the parties raised factual and legal issues critical to Lewis's present cause of action in C.A. 47–69 Erie, since Lewis failed to meet its burden of proof with respect to them, and since these stipulated issues were critical to claims Lewis made at C.A. 47–69 Erie.

Lewis also alleges that Chisholm-Ryder's actions in seeking reconsideration of the Court's findings and in prosecuting appeals give rise to a cause of action under the common law of unfair competition. The Court's declaration in C.A. 47–69 Erie that the Shepardson patent was invalid had grave economic consequences for Chisholm-Ryder as the patent's assignee, and Chisholm-Ryder's efforts to have the Court's opinion reconsidered or reversed were entirely reasonable in light of the hotly contested issues of law and fact presented. Chisholm-Ryder's request for reconsideration of the Court's findings and its appeals were neither baseless nor frivolous. Chisholm-Ryder certainly did not exemplify the bad faith necessary to support a cause of action for unfair competition. *See House of Westmore v. Denney,* 151 F.2d 261, 266 (3d Cir. 1945); *Jacquard Knitting Machine Co. v. Ordnance Gauge Co.,* 108 F.Supp. 59, 68–69 (E.D.Pa.1952); *affirmed,* 213 F.2d 503, 508 (3d Cir. 1954); *Bruen v. Huff,* 100 F.Supp. 713, 719–20 (W.D.Pa.1950); *see also, Falcon Lock Co. v. Best Universal Lock Co.,* 362 F.2d 221, 223 (9th Cir. 1966); *see generally,* 2 R. Callman, Unfair Competition, Trademarks and Monopolies § 42.4 at 253–55 (3d ed. 1968).

Accordingly, we must also dismiss those aspects of the Complaint which attempt to set forth causes of action for violations of the anti-trust laws or the law of unfair competition arising from Chisholm-Ryder's petition for reconsideration of the opinion entered in C.A. 47–69 Erie and its prosecution of appeals.