ROHM AND HAAS COMPANY,
Plaintiff,

v.

BROTECH CORPORATION, Defendant.

Civ.A. No. 90–109–JRR.

United States District Court,
D. Delaware.

Aug. 9, 1991.

Patent holder sued alleged infringer for patent violation. Alleged infringer brought separate lawsuit in another federal district, alleging antitrust, RICO and common-law fraud violations by holder. Patent holder sought injunction barring prosecution of second suit. The District Court, Roth, Circuit Judge, held that claims of alleged infringer were compulsory counterclaims which should have been asserted as defenses in patent infringement case.

Rudolf E. Hutz, N. Richard Powers and Jeffrey B. Bove, Connolly, Bove, Lodge & Hutz, Wilmington, Del. (William E. Lam-

bert, III, Rohm & Haas Company, Philadelphia, Pa., of counsel), for plaintiff.

Josy W. Ingersoll and Vincent J. X. Hedrick, II, Young, Conaway, Stargatt & Taylor, Wilmington, Del. (Herbert B. Keil and Gerald H. Bjorge, Keil & Weinkauf, Washington, D.C., Paul R. Rosen and Niels Korup, Spector Gadon & Rosen, P.C., Philadelphia, Pa., of counsel), for defendant.

## OPINION

ROTH, Circuit Judge.*

Rohm and Haas Company ("R & H") brought this action against Brotech Corporation ("Brotech") alleging that Brotech has willfully infringed four patents owned by R & H. While this Court has yet to confront the underlying patent issues involved in this case, since the time this suit was filed in March, 1990, every issue raised has been violently contested, and every step of this litigation has been marked by fierce controversy. Presently before us is the latest of the parties' battles over what will be litigated in this case, and when and where the litigation will occur. More specifically, we now decide on the merits R & H's motion for an injunction and Brotech's cross motion to dissolve the injunction.

## I. PROCEDURAL HISTORY

The present action was filed in March, 1990, alleging that Brotech had willfully infringed four of R & H's patents for macroporous or macroreticular ion exchange resins, namely U.S. Patents 4,224,415 ('415), 4,382,124 ('124), 4,256,840 ('840), and 4,818,773 ('773). The first three of these four patents were all issued to Erich Meitzner and James Oline, and stem from the same parent application. These patents are referred to as the Meitzner–Oline or M/O patents.

In April, 1991, over one year after the present action was initiated, Brotech, along with Purolite International, Ltd. ("Purolite"), filed suit in the U.S. District Court for the Eastern District of Pennsylvania,

*Purolite International, Ltd., et al. v. Rohm and Haas Co., et al.*, Civil Action No. 91–CV–2740 (the "Pennsylvania action"), against R & H and six of its past and present subsidiaries and employees. The complaint in the Pennsylvania action alleges one antitrust count under the Sherman Act, 15 U.S.C. § 2, four counts asserting violations of RICO, 18 U.S.C. § 1962, and one count of common law fraud. All six counts arise out of an alleged pattern of fraud on the Patent and Trademark Office ("PTO") practiced by defendants in the prosecution and enforcement of ten patents. Four of these patents are the patents-in-suit in the present action.

More specifically, the defendants in the Pennsylvania action are R & H, Duolite International, S.A. ("Duolite"), and five individuals. Duolite is a now defunct French corporation which once was a subsidiary of R & H. The five individuals are all past or present employees of R & H or its subsidiaries. The majority of the factual allegations in the Pennsylvania complaint assert that these defendants obtained ten patents, including the four patents-in-suit in this action, by various methods of fraud on the PTO. The additional patents named in the Pennsylvania complaint are four other Meitzner/Oline patents which stem from the same parent application as the three M/O patents at issue here, a patent that was declared invalid in 1983, and U.S. Patent 4,002,564 ('564), which is alleged to be related to the '773 patent-in-suit here. The complaint also alleges acts of unfair competition concerning sales of factories for the manufacture of ion exchange resins.

After the Pennsylvania action had been instituted, R & H filed a motion for an injunction in this action, requesting that this Court order Brotech to dismiss the Pennsylvania action because the claims asserted by Brotech should have been raised as compulsory counterclaims in this action. R & H also argued that although Purolite is not a party to this action, it is a captive affiliate of Brotech, and that the requested

---

* At the time these motions were briefed and argued, Judge Roth was a District Judge for the United States District Court for the District of Delaware. She presently serves on the United States Court of Appeals for the Third Circuit.

injunction should cover Purolite. On June 5, 1991, we held a teleconference with the parties during which we heard argument for and against R & H's motion.

Following the argument, we found that R & H had made a sufficient preliminary showing on the compulsory counterclaim issue, and by Order of June 5, 1991, we entered a preliminary injunction enjoining the parties from participating in the Pennsylvania action until after R & H's motion for an injunction had been fully briefed, argued, and decided. Because Purolite has never been joined as a party to this action and we lacked sufficient information on the relationship between Brotech and Purolite, our preliminary injunction order did not name Purolite. The injunction did, however, extend to all those acting in concert with the parties, as well as the parties' attorneys, agents, servants, employees, and subsidiaries.

Our Order of June 5, 1991 also set forth a schedule for briefing on the motion for an injunction. On June 19, 1991, however, Brotech, together with Purolite by special appearance, filed a separate motion to dissolve the injunction, and requested an emergency hearing to prevent the loss of critical evidence. The stated grounds for emergency was the impending departure from this country of a key witness. On June 21, 1991, this Court held another teleconference regarding Brotech and Purolite's motion. By Order of June 21, 1991, we modified our injunction to permit the parties to take the deposition of the witness and thus grant the emergency relief sought. Having addressed the emergency nature of the motion, we then ordered that Brotech and Purolite's motion be treated as a cross motion governed by the previously established briefing schedule.

■ Brotech and Purolite filed a notice of appeal of our June 5th and June 21st orders. As set forth in detail in our Orders of July 1, 1991 and July 11, 1991, we nonetheless concluded that we still possess jurisdiction to consider on the merits both R & H's motion for an injunction and Brotech and Purolite's cross motion, because the appeal of an order granting a preliminary injunction does not deprive the district court of jurisdiction to decide whether to grant permanent injunctive relief. *See, e.g., New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1350 (2d Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990); *United States v. Price,* 688 F.2d 204, 215 (3d Cir. 1982).

We heard oral argument on these motions on July 19, 1991. By order of that date, we held that based on the information presented to us, we cannot at this time enter an injunction specifically naming Purolite. First, the evidence presented to us thus far on the structure of the corporate relationship between Brotech and Purolite is insufficient to prove that Purolite is covered by the terms of our preliminary injunction; second, this Court cannot currently exercise personal jurisdiction over Purolite; and third, this Court has not yet issued any order of finality on the merits of this action to be protected by an injunction against Purolite under the All Writs Act, 28 U.S.C. § 1651. *See In re Baldwin–United Corp.,* 770 F.2d 328, 337–38 (2d Cir.1985). Because this Court has not yet decided the merits of this case, we did not reach the issue of whether Purolite is in privity with Brotech under the doctrines of res judicata and collateral estoppel.

In addition, we reserved decision on the question of whether a permanent injunction should issue against Brotech, in order to give R & H an opportunity to respond to a late supplemental filing by Brotech. Having received and reviewed R & H's response, we now address the compulsory counterclaim question as it pertains to Brotech.

## II. WHETHER BROTECH'S CLAIMS IN THE PENNSYLVANIA ACTION SHOULD HAVE BEEN ASSERTED AS COMPULSORY COUNTERCLAIMS IN THE PRESENT ACTION

■ Pursuant to Fed.R.Civ.P. 13(a), a claim is a compulsory counterclaim "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its

adjudication the presence of third parties of whom the court cannot acquire jurisdiction." To determine whether a claim qualifies as a compulsory counterclaim, we must assess whether it bears a "logical relationship" to the opposing party's claims. *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir.1961). A logical relationship is shown:

> where separate trials on each of [the parties'] respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently.

*Id.*

■ Under Rule 13(a), several courts have found that antitrust and fraud claims similar to those asserted by Brotech in the Pennsylvania action are "logically related" to infringement claims in patent cases. For example, the court in *USM Corp. v. SPS Technologies, Inc.*, 102 F.R.D. 167 (N.D.Ill.1984), confronted antitrust claims alleging that a patent had been procured by fraud on the PTO and should be declared invalid. *Id.* at 169. In an earlier patent infringement suit between the same parties, the parties had settled the issue by consent decree. *Id.* at 168. The *USM* court held that the antitrust claims should have been asserted as compulsory counterclaims in the earlier action, and that the failure to do so rendered the claims forever barred. As the court stated:

> Since the fraud allegations necessary to invalidate the ... patent are identical to the fraud allegations which provide the basis for the antitrust claim, there can be no doubt that these claims, although grounded in different legal theories, are essentially identical. Furthermore, the

fraudulent procurement of a patent claim, whether asserted as a defense to an infringement suit or brought separately as an antitrust claim, is "logically related" to a claim for patent infringement. As such, that claim must be presented under Rule 13(a) or it is forever barred.

*Id.* at 170.

Similarly, *Lewis Mfg. Co. v. Chisholm-Ryder Co.*, 82 F.R.D. 745 (W.D.Pa.1979), also involved an antitrust suit brought against a patent holder after the conclusion of a patent infringement case between the same parties. The antitrust suit alleged that the patent holder had precluded its competitor from the market by enforcing patents which it knew had been obtained by fraud on the PTO. *Id.* at 746. The *Lewis* court held that "[b]ecause of its close identity of factual and legal issues with those presented by the [prior] patent infringement action, [plaintiff's] antitrust counterclaim is 'logically related' ... and thus must be viewed as a compulsory counterclaim to [defendant's prior] patent infringement action." *Id.* at 749. The *Lewis* court consequently dismissed the antitrust claims.

Brotech urges us to reject these analyses and instead to follow the Supreme Court's decision in *Mercoid Corp. v. Mid-Continent Inv. Co.*, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944), which involved the effect of an earlier patent case on later asserted antitrust claims. In a prior case, Mid-Continent had sued a third party for patent infringement, and Mercoid had provided the defense for the third party without itself becoming a litigant in that action. *Id.* at 669, 64 S.Ct. at 273. The case that came before the Supreme Court was a subsequent patent infringement action filed by Mid-Continent, this time against Mercoid. Mercoid sought to assert an antitrust counterclaim under Section 4 of the Clayton Act, 15 U.S.C. § 15, alleging that Mid-Continent had misused its patent in violation of the antitrust laws. *Id.* at 670–71, 64 S.Ct. at 273–74. The Supreme Court held that in the patent case before it, Mercoid was not precluded from raising its patent

misuse antitrust counterclaim, because in the prior action it had been a permissive counterclaim governed by Fed.R.Civ.P. 13(b). *Id.* at 671, 64 S.Ct. at 273. The Court also noted that the antitrust claim was "more than a defense; it [wa]s a separate statutory cause of action." *Id.*

Brotech contends that *Mercoid* stands for the proposition that an antitrust claim under Section 4 of the Clayton Act is only a permissive counterclaim in any suit for patent infringement, and consequently the failure to assert such a counterclaim in a patent case will not bar the claim in a subsequent action. Yet, although it still stands as valid law, *Mercoid* has been widely and severely criticized, and most courts have narrowed it to its facts. *See, e.g., United States v. Eastport Steamship Corp.*, 255 F.2d 795, 805 (2d Cir.1958). Indeed the *Lewis* and *USM* decisions discussed above, found two different grounds for rejecting *Mercoid* as controlling authority.

The *Lewis* court distinguished *Mercoid* based on the fact that in the earlier action Mercoid was not a party but was only defending another company; consequently, the *Lewis* court reasoned, Mercoid could not have been expected to raise the claim in the earlier litigation. 82 F.R.D. at 750. Second, the court in *USM* held that *Mercoid* only permits subsequent antitrust claims that are based on *patent misuse.* 102 F.R.D. at 171. This limitation stems in part from the fact that the *Mercoid* Court's analysis relied on the importance of preserving the integrity of the patent monopoly and preventing schemes to expand a patent beyond its legitimate scope. *See* 320 U.S. at 670, 64 S.Ct. at 273. This rationale would not apply to the theory alleged in the antitrust claims in *USM* and the Pennsylvania action, which involve inequitable conduct in obtaining the patent in the first place. In fact, the *Mercoid* Court could not have envisioned the application of its holding to the type of claim at issue here, because it was not until over twenty years after *Mercoid* that the Supreme Court first recognized that allegations of fraudulent procurement of a patent could state a claim under the antitrust laws. *See*

*Walker Process Equip., Inc. v. Food Mach. & Chemical Corp.*, 382 U.S. 172, 177–78, 86 S.Ct. 347, 350–51, 15 L.Ed.2d 247 (1965).

In an attempt to demonstrate that *Mercoid* is still intact and a binding precedent, Brotech cites six cases which have cited and relied upon *Mercoid.* Three of these cases, *Fowler v. Sponge Prod. Corp.*, 246 F.2d 223 (1st Cir.1957), *Canned Foods, Inc. v. United States*, 135 Ct.Cl. 862, 146 F.Supp. 470, 472 (1956), and *Gasswint v. Clapper*, 17 F.R.D. 309, 312–13 (W.D.Mo. 1955), are themselves over thirty years old, and because they too have spawned few progeny, we do not view them as persuasive authority. A fourth case, *Crabtree v. Haladye*, 14 B.R. 601 (Bankr.N.D.Ohio 1981), is neither on point nor authoritative in this circuit; it is a decision of the Bankruptcy Court for the Northern District of Ohio which holds that in an action to avoid a lien, a counterclaim to determine dischargeability is not a compulsory counterclaim.

Although the final two cases cited by Brotech are decisions of this district, neither provides a basis for reading *Mercoid* any more broadly than did the *USM* court. *Brady v. C.F. Schwartz Motor Co.*, 723 F.Supp. 1045 (D.Del.1989), is a debt collection case which simply cites *Mercoid* for the inarguable proposition that permissive counterclaims are not barred in a later action. *Id.* at 1048. The final case Brotech cites, *Rixon Inc. v. Racal–Milgo, Inc.*, 551 F.Supp. 163 (D.Del.1982), is the best authority for its position, but it too fails to compel the conclusion Brotech desires.

In *Rixon*, this Court relied on *Mercoid* in deciding to hear an accused infringer's antitrust counterclaim despite the existence of a prior judgment in a patent case in the U.S. District Court for the District of Kansas. 551 F.Supp. at 183–84. In the Kansas action, Racal–Milgo, Inc. ("Milgo"), the patent holder, had sued a predecessor in interest of Rixon for patent infringement. Rixon subsequently brought the Delaware suit against Milgo, seeking a declaration that the Milgo patents were invalid. This Court held that as to one patent, Rixon would stand in its predecessor's shoes for pur-

poses of the res judicata and collateral estoppel effects of the Kansas judgment. *Id.* at 171. The *Rixon* court found, however, that any such res judicata or collateral estoppel effect would not bar Rixon from asserting an antitrust claim alleging that Milgo misused its patent in violation of the antitrust laws, and held that "res judicata should not be applied to bar litigation of whether judicial relief should be denied to one which has allegedly misused its patent." *Id.* at 184 (citing *Mercoid*).

Thus, *Rixon* fits under the narrow *Mercoid* rule that antitrust claims based on patent misuse may be raised in a subsequent action. More importantly, the misuse at issue in *Rixon* was that of perpetrating fraud on the court in the prior Kansas action. The *Rixon* court found by clear and convincing evidence that Milgo and its counsel had knowingly presented false testimony to the Kansas court to convince that court that its patent was valid. *Id.* at 175. This Court therefore permitted Rixon to litigate its antitrust claim in the Delaware action largely because the case involved " 'a deliberately planned and carefully executed scheme to defraud ... a Court ... through the presentation of a theory of patentability manufactured by a patent holder out of whole cloth.' " *Id.* at 184 (citing *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944)). Consequently, the *Rixon* decision may also be viewed as this Court's refusal to give res judicata effect to a Kansas judgment that had been obtained by fraud.

Having considered the cases interpreting *Mercoid*, we find that the decisions such as *USM Corp. v. SPS Technologies, Inc.*, 102 F.R.D. 167 (N.D.Ill.1984), which limit the *Mercoid* holding to antitrust cases involving patent misuse, constitute persuasive authority, and that none of the cases Brotech cites compels a different conclusion. We consequently find that *Mercoid* is inapplicable to this case.

Rather, we believe that the decisions in *USM* and *Lewis Mfg. Co. v. Chisholm–Ryder Co.*, 82 F.R.D. 745 (W.D.Pa.1979), which we discussed above, demonstrate that Brotech's claims in the Pennsylvania action should have been brought as compulsory counterclaims here. In the present case, we consider these issues in a somewhat different procedural posture. Unlike the cases presented to the *USM* and *Lewis* courts, this action is the earlier patent infringement suit, and we are asked to enjoin a later filed antitrust and RICO fraud action, rather than to apply res judicata to bar a subsequent suit. Yet, in all other respects, the circumstances of the present case are virtually identical to those confronted in *USM* and *Lewis*, and we agree with the conclusions reached by those courts. We also believe that the *USM* and *Lewis* courts' analyses of antitrust claims are easily extended to Brotech's RICO fraud claims, since both causes of action stem from alleged fraudulent procurement of a patent. In each of these cases, the earlier suit has been brought by the patent holder alleging infringement, and the subsequent suit has been filed by the alleged infringer claiming antitrust violations and fraud. Here, too, we find that the later filed antitrust and fraud claims alleging fraud on the PTO, are logically related to the patent claims at issue in the earlier filed suit.[1]

Brotech seeks to escape this conclusion by arguing that the "roots test" formulation of the compulsory/permissive counterclaim test in *A. H. Gruetzmacher & Co. v. Massey–Ferguson, Inc.*, 512 F.Supp. 194 (N.D.Ill.1981), compels a different result. In that case, the court stated that " 'a counterclaim that has its roots in a separate transaction or occurrence is permissive and is governed by Rule 13(b).' " *Id.* at 200 (quoting *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257 (7th Cir.1977)). Yet, even were we to adopt this statement of the test rather than that of the Third Circuit in *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631,

---

1. We expressly decline to decide the issue of whether Brotech has properly asserted a counterclaim in this action alleging inequitable conduct by R & H. That question may be resolved in connection with the pending cross motions for summary judgment.

634 (3d Cir.1961), we do not agree that the outcome would change. The type of fraud that Brotech alleges is fraudulent procurement of a patent. Unlike claims that a patent holder misused a patent to expand a patent monopoly in violation of the antitrust laws, such claims of fraud on the PTO directly implicate issues of patent law, and stem from the same "roots" as infringement claims.[2]

■ Nor is our conclusion that the Pennsylvania claims are compulsory counterclaims undermined by the fact that the Pennsylvania action involves six additional R & H patents and several additional parties. As outlined above, four of the six additional patents are Meitzner–Oline patents stemming from the same parent application as the three M/O patents-in-suit. Moreover, the alleged fraud involves a "liquid expulsion technique" claimed in all seven patents, and the parent patent for the group is one of the patents-in-suit in this action. Similarly, the '564 patent is alleged to be related to the '773 patent-in-suit here, and the same pattern of fraud is alleged against both of these two patents. Finally, the sixth additional patent was declared invalid in 1983. It therefore simply constitutes evidence of Brotech's allegations of fraud, and does not expand the claims in the Pennsylvania action. The same may be said of the allegations concerning sales of ion exchange resin manufacturing plants.

■ Similarly, the addition of extra parties in the Pennsylvania action does not affect the compulsory counterclaim issue, as demonstrated by the case of *AMP, Inc. v. Zacharias*, 1987 WL 12676 (N.D.Ill. June 15, 1987), cited by R & H. The *AMP* decision concerned the second of two lawsuits involving similar parties. The first case had been a patent suit filed in the U.S. District Court for the Middle District of Florida by Precision Plating Co. ("Precision") and Micro–Plate, Inc. against AMP, Inc. The second case was filed by AMP in the U.S. District Court for the Northern District of Illinois alleging RICO violations against Precision and various individual defendants. Each of the individual defendants in the Illinois action was an officer or key employee of the corporate plaintiffs in the Florida case.

The *AMP* court found that "Rule 13(a) is not limited in its application to original parties," Slip Op. at 3, and concluded that despite the addition of several individual defendants in the later filed Illinois case, the claims involved should have been raised as compulsory counterclaims in the Florida case. The court relied in part on Fed. R.Civ.P. 13(h) which addresses joinder of parties for counterclaims, finding it "contemplates the situation where additional parties are required for the granting of complete relief." Slip. Op. at 3. As in *AMP*, all the additional defendants in the Pennsylvania action are related to the company that owns the patents. Thus, their joinder does not alter our conclusion that the Pennsylvania claims are compulsory counterclaims in the present action. Furthermore, it is also noteworthy that the *AMP* case found that RICO claims alleging fraudulent procurement of a patent were logically related to claims alleging patent infringement.

**2.** Brotech's counsel contended at oral argument that the specific type of fraudulent procurement alleged in the Pennsylvania action is unrelated to chemistry and patent law. Brotech has charged that the inventors of the R & H patents filed an affidavit with the PTO falsely stating that they had tested all the examples presented and none worked. Brotech's counsel argued that the falsity of the affidavit was not due to chemistry, but to the fact that the inventors had actually tested only one of the three examples, and that had they tested the other two examples, the inventors would have discovered that they did successfully produce a macroporous resin. (Transcript, Docket Item 143 at 51). This argument does not establish that the Pennsylvania claims are free from issues of chemistry. Although the failure to perform tests may be proven without resort to chemical analysis, the allegation that the other two examples did work does involve chemistry.

In any event, even were the chemical compositions of the patented and alleged infringing products completely irrelevant to the Pennsylvania claims, allegations of fraudulent procurement of a patent still involve fundamental issues of patent law which are logically related to infringement issues. For example, to determine whether an applicant had practiced fraud on the PTO, the factfinder must assess what evidence must be presented to the PTO to obtain legitimate approval of a given patent application.

Finally, we note that the Rule 13(a) compulsory counterclaim test promotes judicial economy by requiring litigants to consolidate all related claims in one forum. Brotech's counsel contended at oral argument that the present action is a simple patent case whose sole issues pertain to chemical compositions, whereas the Pennsylvania action involves a broad, sweeping pattern of fraud and monopoly unrelated to the chemical issues involved here. (Transcript, D.I. 143 at 20). We do not accept this characterization; the litigation to date in the present suit has been anything but simple and focused. In fact, in a case involving litigation as contentious as that in this action, our concerns for judicial economy are heightened.

Thus, we conclude that under Rule 13(a), the antitrust, RICO, and common law fraud claims asserted by Brotech in the Pennsylvania action should have been brought as compulsory counterclaims in the present action.

## III. WHETHER AN INJUNCTION SHOULD ISSUE AGAINST BROTECH

■ Under the first-in-time rule, when two actions involve the same parties and issues, the Court hearing the earlier filed action may enjoin proceedings in the second action. As this Court has previously stated, "[t]he Court's authority to enjoin a party within its jurisdiction from prosecuting the same cause of action in another suit in another court is undisputed." *Bamdad Mechanic Co. v. United Technologies Corp.*, 109 F.R.D. 128, 134 (D.Del.1985) (citing *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir.1941), *cert. denied,* 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942)). *Accord Omni–Exploration, Inc. v. McGookey,* 520 F.Supp. 36, 37 n. 1 (E.D.Pa.1981) ("Where an action is brought in one federal district court and a later action involving the same parties and issues is brought in another federal district court, the first court may enjoin the prosecution of the later filed case.")

Given our determination of the compulsory counterclaim issue, we will invoke our authority to enjoin Brotech from litigating the later filed Pennsylvania action. Pursuant to Fed.R.Civ.P. 65(d), the injunction will extend to all those acting in concert with Brotech, as well as to Brotech's attorneys insofar as they are acting in their capacities as Brotech's attorneys, and to its officers, agents, servants, and employees, insofar as they are acting in those capacities. However, given our earlier determination that we do not presently possess authority to enjoin Purolite, we will not name Purolite in the injunction. As a result, unless Purolite is later demonstrated to have violated the terms of the injunction by acting in concert with Brotech, or unless this case reaches final determination and Purolite is found to be in privity with Brotech under the doctrines of res judicata and collateral estoppel, the Pennsylvania action will presumably proceed with Purolite as sole plaintiff. Since R & H is still a defendant in the Pennsylvania action, the injunction will not cover R & H.

## IV. CONCLUSION

Brotech's claims in the Pennsylvania action should have been brought in the present action as compulsory counterclaims under Fed.R.Civ.P. 13(a). Consequently, we will issue a permanent injunction, ordering Brotech to dismiss its later filed Pennsylvania claims, and enjoining it from participating any further in the Pennsylvania action in any capacity other than that of a third party witness.