**John DORAN, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**The PURDUE PHARMA COMPANY; Purdue Pharma L.P.; the Purdue Frederick Company; Purdue Pharmaceuticals L.P.; P.F. Laboratories, Inc.; and Doe 1 through Doe 20, inclusive, Defendants.**

No. CV–S–04–0450–RLH(RJJ).

United States District Court, D. Nevada.

June 30, 2004.

Bruce Tingey, Tingey & Tingey Law Firm, Las Vegas, NV, William Audet, Pro Hac Vice Firm, San Jose, CA, for Plaintiff.

Gary Goodheart, Jones Vargas, Las Vegas, NV, Christopher Sipes, Mark Lynch, Paul Schmidt, Timothy Hestor, Covington & Burling, Washington, DC, for Defendants.

## ORDER

HUNT, District Judge.

Before the Court is Plaintiff's **Motion for Remand** (# 8), filed May 7, 2004. The Court has also considered Defendants' Opposition (# 13), filed May 21, 2004, and Plaintiff's Reply (# 25), filed June 3, 2004. Also before the Court is Defendants' **Motion to Transfer Proceedings** (# 4), filed April 22, 2004. The Court has also considered Plaintiff's Opposition (# 9), filed May 7, 2004, and Defendants' Reply (# 12), filed May 21, 2004.

## BACKGROUND

Plaintiff is a Nevada resident. Defendants consist of corporations and general partnerships, organized under the laws of New York, Delaware and New Jersey, engaging in the research, development, production and sales of pharmaceutical drugs throughout the United States.

Defendants own several patents for the drug Oxycodone Hydrochloride, also known as OxyContin® ("OxyContin"). Defendants manufacture and market Oxy-Contin, which is one of the nation's top-selling pain medications. Generally, within a year from the release of a new drug, the manufacturer's market share decreases significantly due to generic substitutions. However, to date, no generic equivalent to OxyContin has been made available. With no generic substitute on the market, Defendants' sales for the drug reach $1.8 Billion annually.

In 2000, Endo Pharmaceuticals Inc. ("Endo") sought to release a generic version of OxyContin. Pursuant to the Hatch–Waxman Act, codified in the Food and Drug Act at 21 U.S.C. § 355 *et seq.*, a generic drug producer may file an Abbreviated New Drug Application ("ANDA") with the Food and Drug Administration ("FDA"), allowing the applicant to request approval to release a generic version of an already-branded drug. However, within 45 days of the ANDA, the patent owner for the branded drug, upon receiving notice of the ANDA, has the right to bring suit against the applicant for patent infringement. After the patent owner files suit, the ANDA applicant cannot release the generic drug on the market for up to 30 months.

Endo filed an ANDA seeking approval from the FDA to release a generic version of OxyContin. To prevent Endo from obtaining FDA approval for the generic equivalent of OxyContin, Defendants timely filed suit for patent infringement. The action resulted in a 30–month automatic stay of the FDA's authority to approve Endo's generic version of the drug. Endo counter-claimed against Defendants, alleging Defendants' patents were improperly

attained, and that the patents were invalid and unenforceable.

After an 11–day bench trial, Judge Stein, of the United States District Court for the Southern District of New York, held the Defendants were precluded from enforcing their patents. The court held that, even though Endo infringed on Defendants' patents, the Defendants' inequitable conduct towards the United States Patent and Trademark Office (PTO) rendered the patents unenforceable. The court found the Defendants had made intentional, material misrepresentations to the PTO regarding the patents. Purdue has appealed the District Court's decision.

On March 9, 2004, as a result of Defendants' previous litigation, Plaintiff John Doran filed a Complaint in the Eighth Judicial District, Clark County, Nevada. Plaintiff brings this case on behalf of himself and "all natural persons in the state of Nevada who indirectly purchased OxyContin® manufactured by Defendants at any time during the period December 1, 1995 to present." (Comp ¶ 14.) Plaintiff alleges Defendants established and maintained monopolies, contracts, agreements, combinations and conspiracies, restraining the trade in the market for OxyContin. Plaintiff asserts that Defendants unlawfully obtained patents by making material misrepresentations to the PTO, and participated in "sham litigation" against generic drug manufacturers in order to monopolize the market. Plaintiff alleges (1) a violation of Nevada's Unfair Trade Practices Act, NRS § 598A, et seq.; and (2) common law monopolization. Plaintiff asserts that, because of Defendants' actions, Plaintiff and class members have been forced to pay artificially inflated prices for their medication.

This action is one of several filed against Defendants throughout the United States, resulting from Defendants' litigation with Endo. The vast majority of these cases are based on the same contention: that Defendants participated in "sham litigation" with generic drug producers, and Defendants unlawfully obtained their patents. The majority of these suits have either been filed in federal court, or have been removed to federal court. Defendants seek to have all suits transferred back to the Southern District of New York, where the majority of the cases currently sit. In addition, the Judicial Panel on Multi-district Litigation. ("JPML") has ordered several similar cases to be transferred to the Southern District of New York for pretrial proceedings.

Defendants removed to this Court on April 12, 2004. Subsequently, on April 22, 2004, Defendant filed a Motion to Transfer Proceedings to the Southern District of New York. On May 7, 2004, Plaintiff filed a Motion for Remand, requesting that the Court return the action to state court.

## DISCUSSION

Defendants contend that the Court should transfer this case to the Southern District of New York without addressing Plaintiff's Motion for Remand. Defendants argue the Court should allow Judge Stein to resolve the remand issues in all removed cases simultaneously. Conversely, Plaintiff contends that the Court should first address the jurisdictional issue raised by the Motion to Remand. The Court declines to address Defendants' Motion to Transfer before determining whether the Court has jurisdiction.

### I. Motion to Remand

Plaintiff alleges that Defendants improperly removed this action, and that remand is proper because the Court lacks subject matter jurisdiction. Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a state court of which the district courts of the United States have orig-

inal jurisdiction, may be removed by the defendant or other defendants, to the district court of the United States ....". However, removal is proper only where the federal court would have had original jurisdiction if the plaintiff had originally filed the action in federal court. *Id.* The Court strictly construes the removal statute, and must reject federal question jurisdiction if there is any doubt as to whether removal was proper. *See Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Cir.1996).

Defendants contend that the Court has subject matter jurisdiction because Plaintiff's relief depends upon the resolution of substantial questions of federal patent law. Further, Defendants claim the Court has jurisdiction because Plaintiff's claims are completely preempted by ERISA.

■ Federal courts have "original jurisdiction of all civil actions arising under the Constitution, law or treaties of the United States." 28 U.S.C. § 1331. Additionally, federal courts have exclusive original jurisdiction over actions "arising under any Act of Congress relating to patents ...." 28 U.S.C. § 1338(a). Federal courts have federal question jurisdiction for cases "[i]n which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

■ Under the well-pleaded complaint rule, a plaintiff is permitted to structure a claim in a way that prevents removal from state court. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Thus, the majority of cases heard by a federal court will be those in which "federal law creates the cause of action." *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Howev-

er, a corollary rule provides that a plaintiff is not permitted to exclude necessary federal questions in a complaint in order to defeat removal from the state court. *Franchise Tax Bd. of Cal.,* 463 U.S. at 22, 103 S.Ct. 2841.

■ A district court's jurisdiction extends to cases where a well-pleaded complaint establishes that the claim either arises directly from a federal question, or a party's relief depends upon the resolution of some federal question. *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808–809, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Pursuant to § 1338, the question must be one concerning federal patent law. *Id.* at 809, 108 S.Ct. 2166. "Even though state law creates [a party's] causes of action, its case might still arise under the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law." *City of Chicago v. Int'l College of Surgeons,* 522 U.S. 156, 118 S.Ct. 523, 529, 139 L.Ed.2d 525 (1997). Just because a plaintiff's cause of action does not specifically state an issue of patent law does not necessarily mean that the claim does not arise under patent law. *Christianson,* 486 U.S. at 809 n. 3, 108 S.Ct. 2166.

■ Here, neither party disagrees that, facially, the Complaint is based on state law as opposed to federal question. However, Defendants argue that Plaintiff's relief depends upon the resolution of federal patent law. Plaintiff's state law claims are based on the allegations that Defendants unlawfully obtained its patents through making material misrepresentations to the PTO, and participated in "sham litigation" to enforce it patents. Defendants contend that in order for Plaintiff to prove his claims he must prove Defendants unlawfully obtained and enforced its patents. Defendants claim that doing so involves re-

solving questions of federal patent law, thus giving this Court subject matter jurisdiction.

The Court holds that Plaintiff's state law claims depend upon the resolution of a substantial question of federal patent law, providing the Court with federal question jurisdiction. First, determining whether Defendants obtained patents through "unlawful efforts" involves the resolution of substantial question of federal patent law, including what information the Defendant had a duty to disclose. The Federal Circuit has held that "[w]hether conduct in procuring ... a patent is sufficient to strip a patentee of its immunity ... is one of those issues that clearly involves our exclusive jurisdiction over patent cases." *Nobelpharma A.B. v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed.Cir.1998). In order for Plaintiff to prove his claims, he must show that Defendants unlawfully obtained its patents. "For example, to determine whether an applicant has practiced fraud on the PTO, the fact finders must assess what evidence must be presented to the PTO to obtain legitimate approval of a given patent application." *Rohm & Haas Co. v. Brotech Corp.*, 770 F.Supp. 928, 934 n. 2 (D.Del.1991).

Judge Stein's holding that Defendants made misrepresentations is not sufficient to show that the patents were obtained unlawfully. Inequitable conduct does not equate to unlawful conduct. Thus, for Plaintiff to show that Defendants' conduct was unlawful, the conduct must be examined in light of patent law to determine what information must be submitted to the PTO and what type of conduct amounts to unlawful activity. The sole assertions in Plaintiff's Complaint, supporting his claims of unfair trade practices and monopoly, require the determination of whether Defendants fraudulently obtained their patents.

Second, whether Defendants participated in "sham litigation" in enforcing their patents also involves substantial question of federal patent law. While Plaintiff contends that Defendants' litigation against Endo was "baseless," the court must look to federal patent law to determine whether the target litigation was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). The question whether a litigant had a reasonable prospect of prevailing in a federal patent lawsuit can only be evaluated by reference to the standards of federal law for the enforcement of a patent. *See Nobelpharma*, 141 F.3d at 1068. The fact that Endo prevailed in the litigation against Defendants does not necessarily mean that the litigation was a sham. Thus, the sole assertions in Plaintiff's well-pleaded Complaint to support his claims of unfair trade practices and monopoly rely on whether Defendants fraudulently litigated their patents.

■ While Plaintiff argues that these issues were resolved by Judge Stein, and has claimed collateral estoppel, the Court disagrees. In the prior proceedings, Judge Stein analyzed whether the patents were infringed upon and whether inequitable conduct barred the enforcement of those patents. Judge Stein held that Plaintiff infringed upon Defendants patents. However, Judge Stein held that Defendants had engaged in inequitable conduct towards the PTO, rendering the patents unenforceable. Inequitable conduct is distinct from unlawful conduct which requires a "higher threshold showing of both intent and materiality than does a finding of inequitable conduct." *See Nobelpharma*, 141 F.3d at 1070–1071. Judge Stein did not decide that Defen-

dants' conduct was unlawful or that the litigation was a "sham." Collateral estoppel does not apply to issues that were not "actually decided" in the prior litigation. *Town of North Bonneville v. Howard A. Callaway,* 10 F.3d 1505, 1508 (9th Cir. 1993). Collateral estoppel does not apply to the current case because the issues were not previously decided.

Because the Court concludes that federal question jurisdiction is present, it will not address whether ERISA preemption might confer subject matter jurisdiction.

## II. Motion to Transfer

Because the Court finds subject matter jurisdiction, it now addresses Defendants' Motion to Transfer Proceedings (# 4). Defendants moved to transfer this case on April 22, 2004. On the same day, the JPML transferred several related cases to the Southern District of New York, pursuant to 28 U.S.C. § 1407. *See In Re Oxy-Contin Antitrust Litigation,* Docket No. 1603 (J.P.M.L. April 22, 2004). While this case was not covered by the JPML transfer Order, Defendant has, or will, notify the JPML about this case, and expects that the JPML will designate this case as a tag-along case shortly. *See* J.P.M.L. R. 1.1. The Court will stay Defendants' Motion to Transfer until further notice from the JPML.

## CONCLUSION

Accordingly, and for good cause appearing.

IT IS HEREBY ORDERED that Plaintiff's Motion to Remand (# 8) is **DENIED.**

IT IS FURTHER ORDERED that Defendants' Motion to Transfer Proceedings (# 4) is stayed, pending consideration of a transfer from the Judicial Panel for Multi-District Litigation.