INSULTHERM, INC.

v.

TANK INSULATION INTERNATIONAL,
INC.

TANK INSULATION INTERNATIONAL,
INC.

v.

INSULTHERM, INC., Thermacon,
Inc., and Mark A. McBride.

Civ. A. Nos. G–93–558, G–95–348.

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 30, 1995.

Stephen D. Dellett, Arnold White & Durkee, Houston, TX, Sydney Leach, Baker & McKenzie, Dallas, TX, for Insultherm, Inc.

Robert P. Houston, Houston Marek & Griffin, Victoria, TX, William E. Johnson, Jr., Loren G. Helmreich, Browning Bushman Anderson & Brookhart, Houston, TX, for Tank Insulation International, Inc.

Sydney Leach Baker & McKenzie, Dallas, TX, for Mark A. McBride.

## ORDER

KENT, District Judge.

Presently before the Court are Insultherm, Inc.'s Motion for Reconsideration; Mark McBride's and Insultherm's joint Motion to Dismiss, or Alternatively, for Summary Judgment; and Tank Insulation, Inc.'s Motion for Leave to File Counterclaim. As will be set forth in detail below, Tank Insulation's Motion is hereby **DENIED,** and Insultherm's Motion for Reconsideration and Insultherm's and McBride's Motion to Dismiss are hereby **GRANTED.**[1]

## I. BACKGROUND

On September 20, 1993, Insultherm, Inc. filed an action (the First Action) against Tank Insulation International, Inc. (TII), contending TII's insulation system for large storage tanks infringed on Insultherm's insulation system covered by U.S. Patent No. 4,545,490 (the '490 patent). Insultherm also sued TII for unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125. In its answer to the First Action, TII counterclaimed, seeking a declaratory judgment that the '490 patent was invalid. TII contended that Insultherm and Defendant Mark McBride, a shareholder and officer of Insultherm, and inventor of the '490 patent, engaged in fraudulent or inequitable conduct before the United States Patent and Trademark Office (the PTO), rendering the '490 patent invalid or unenforceable.

At the trial of the First Action in April 1994, this Court concluded that McBride engaged in inequitable and fraudulent conduct before the PTO during the prosecution of the '490 patent. The Court declared the '490 patent unenforceable, and dismissed Insultherm's infringement and unfair competition claims against TII. However, the Court did not reach the question of the validity of the '490 patent, and dismissed TII's counterclaims against Insultherm. *See* Final Judgment, No. 93–CV–558, dated June 10, 1994. Insultherm appealed the decision of this Court in the First Action. On April 25, 1995, the United States Court of Appeals for the Federal Circuit vacated this Court's decision and remanded the First Action for retrial.

On January 26, 1995, before the Federal Circuit's decision in the First Action, TII filed a complaint against Insultherm, Thermacon, and McBride (the Second Action) in

1. The Court's disposition of these Motions moots the Motion to Dismiss filed by Thermacon, Inc.

the United States District Court for the Southern District of Texas, Victoria Division. In the Second Action, TII contends Insultherm and Thermacon violated the Sherman Act by acting in concert to file the First Action against TII knowing that the '490 patent was unenforceable, without determining if TII was in fact infringing on the '490 patent, and without regard to outcome of the infringement action. On June 1, 1995, the Second Action was transferred to this Court, and, on June 29, 1995, this Court granted TII's Motion to Consolidate the First Action and the Second Action and its Motion for Leave to File Counterclaim. The Court directed that the claims raised by TII in the Second Action were to be treated as counterclaims to Insultherm's claims in the First Action.

Thermacon, a Defendant in the Second Action, is yet another player in the tank insulation game, and holds a patent for its particular insulation system. According to TII's complaint in the Second Action, Insultherm accused Thermacon of infringing on the '490 patent. In response, Thermacon claimed the '490 patent was invalid because it had been obtained through inequitable conduct. According to TII, Insultherm and Thermacon resolved the infringement dispute by entering into an agreement (the Licensing Agreement) whereby they agreed to cross-license the Thermacon patent and the '490 patent. The Licensing Agreement gives each party the right to use and sell both insulation systems within what the Licensing Agreement describes as the other party's "exclusive license area." [2] In addition, the Licensing Agreement contains provisions requiring Insultherm and Thermacon to notify the other of any suspected infringement of its patent and cooperate in any infringement suit. The cooperation contemplated under the Licensing Agreement includes having employees testify when requested by the other party, and making available any records or other information that may be needed. TII contends that Thermacon had "intimate knowledge" of the '490 patent and knew the '490 patent was invalid before it entered into the Licensing Agreement, and that Thermacon suggested Insultherm take actions against TII to enforce the '490 patent in spite of its knowledge that the '490 patent was unenforceable.

## II. INSULTHERM'S MOTIONS

Insultherm has filed a Motion requesting this Court reconsider its June 29 Orders, and Insultherm and McBride have filed a Motion requesting this Court dismiss TII's Complaint in the Second Action, or, alternatively, grant summary judgment against TII's antitrust claims. The arguments in the Motion to Reconsider are essentially the same as those in the Motion to Dismiss; accordingly, these Motions will be considered together.

In support of their Motion to Dismiss, Insultherm and McBride primarily contend TII's antitrust counterclaims were compulsory counterclaims that TII should have raised in the First Action.[3] They argue that to allow TII to pursue its antitrust counterclaims at this stage in the litigation, more than one year after the first trial, would be extremely costly and would unnecessarily and unfairly protract the litigation.

Under the Federal Rules of Civil Procedure, a compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed.R.Civ.Pro.R. 13(a). Thus, under Rule 13, the inclusion of Thermacon and McBride, who were not parties to the First Action, prevents the antitrust claims from being

---

**2.** Under the Licensing Agreement, Insultherm's exclusive licensing area primarily consists of the Gulf states, including Texas. Thermacon's exclusive licensing area primarily consists of states in the Northeast.

**3.** In their initial Motion to Dismiss, Insultherm and McBride argued TII's counterclaims were barred under the doctrine of *res judicata*. However, after the Federal Circuit vacated and remanded this Court's decision in the First Action, Insultherm and McBride abandoned their *res judicata* arguments. *See* Insultherm's and McBride's Reply Brief, p. 1, n. 1. Insultherm and McBride also contend TII has failed to state an antitrust claim; however, because of the Court's disposition of the counterclaim issue, the Court does not reach this argument.

characterized as compulsory counterclaims only if Thermacon and McBride are necessary parties to the antitrust claims, and this Court lacks personal jurisdiction over them. Fed.R.Civ.Pro. 13(a); *see also Asset Allocation & Management Co. v. Western Employers Ins. Co.,* 892 F.2d 566, 574 (7th Cir.1989) (fact that counterclaim named additional parties does not prevent counterclaim from being characterized as compulsory if personal jurisdiction exists over the additional parties); *Zurn Indus. v. Acton Constr. Co.,* 847 F.2d 234, 236 (5th Cir.1988) (if a party is added pursuant to a compulsory counterclaim, the court has ancillary jurisdiction over the claim or the party even in the absence of an independent basis for federal jurisdiction); *Albright v. Gates,* 362 F.2d 928, 929 (9th Cir.1966) (in case where defendant in slander action asserted counterclaims against plaintiff and additional parties, there was sufficient overlapping of factual background to characterize the counterclaims as compulsory as to the original plaintiff and new parties); *Rohm & Haas Co. v. Brotech Corp.,* 770 F.Supp. 928, 934 (D.Dela.1991) (antitrust claims asserted by defendant in separate action were compulsory counterclaims despite fact that the claims were asserted against other parties in addition to the plaintiff in the original patent infringement suit); *AMP Inc. v. Zacharias,* No. 87–C–3244, 1987 WL 12676 at *2 (N.D.Ill. June 15, 1987) (fact that there is not complete identity of issues and parties does not prevent claim from being a compulsory counterclaim). McBride is a resident and citizen of Texas; thus, there is no question that this Court has jurisdiction over him. In addition, while Thermacon is a Delaware corporation with offices in New York, it is nonetheless subject to jurisdiction in Texas, at least as to TII's claims against it.

■ In federal court, personal jurisdiction over a non-resident defendant is proper if: (1) the defendant is amenable to service of process under the forum state's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061 (5th Cir.), *cert. denied,* 506 U.S. 867, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992).[4] The Texas long-arm statute authorizes service of process on a nonresident defendant if the defendant "does business" in Texas. A nonresident does business in Texas if the nonresident, *inter alia,* "commits a tort in whole or in part in [Texas]." Tex.Civ.Prac. & Rem.Code Ann. § 17.042(2). According to TII, Thermacon conspired with Insultherm by bringing the First Action against TII in spite of its knowledge that the '490 patent was invalid. For purposes of this personal jurisdiction analysis, conspiracy to commit antitrust violations is in the nature of a tort. *Black v. Acme Markets, Inc.,* 564 F.2d 681, 685 (5th Cir.1977) ("Delictual conduct violative of the anti-trust laws may be treated analogously to tortious conduct" for the purpose of a personal jurisdiction analysis). Thermacon's conduct was directed at and caused injury to TII in Texas. Therefore, by conspiring with Insultherm to wrongfully bring an infringement action based on an invalid patent, Thermacon committed a tort in Texas, and is amenable to service of process under the Texas long arm statute. *Acme Markets,* 564 F.2d at 685–86 (where conduct violating antitrust laws occurred outside Texas, defendant was subject to service under the Texas long arm statute because the conduct "produced reasonably foreseeable harm within Texas"); *see also Hupp v. Siroflex of America, Inc.,* 848 F.Supp. 744, 746 (S.D.Tex.1994) (tort is committed where the injury occurs).

■ Furthermore, the exercise of personal jurisdiction over Thermacon under these circumstances is consistent with due process. The exercise of personal jurisdiction over a defendant is consistent with the Due Process Clause of the United States Constitution if the defendant has "minimum contacts" with the forum state, *International*

4. In response to Thermacon's Motion to Dismiss, TII argues the traditional due process analysis is unnecessary in this case because the Sherman Act provides for nationwide service of process. Because the Court finds jurisdiction over Thermacon exists under a traditional personal jurisdiction analysis, the Court does not address the impact of a statute authorizing nationwide service of process on a personal jurisdiction analysis.

*Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and if requiring the defendant to litigate in the forum state does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994); *Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir.1993). By conspiring with Insultherm, a Texas resident, in an attempt to frustrate the commercial efforts of TII, another Texas resident, Thermacon clearly has minimum contacts with Texas. Moreover, because Thermacon's actions were aimed at Texas and it knew the brunt of its actions would be felt by TII in Texas, Thermacon should reasonably have anticipated being haled into court in Texas to answer for its conduct. *See, e.g., Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984) (California court could constitutionally exercise personal jurisdiction over Florida defendants whose intentional and allegedly tortious actions were "expressly aimed at California," thus the defendants could reasonably anticipate being sued in California); *see also Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 772 (5th Cir. 1988) (personal jurisdiction in tort case requires evidence that tortfeasor expressly aimed its tortious activities at Texas).[5] Thus, this Court has personal jurisdiction over both McBride and Thermacon. Accordingly, their inclusion in the Second Action does not prevent TII's antitrust claims from being characterized as compulsory, if the claims otherwise meet the definition of compulsory counterclaims.

■ To determine whether a counterclaim is compulsory, the Court must consider
(1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether *res judicata*

would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim.

*Park Club, Inc. v. Resolution Trust Corp.,* 967 F.2d 1053, 1058 (5th Cir.1992); *accord Plant v. Blazer Fin. Servs., Inc.,* 598 F.2d 1357, 1360 (5th Cir.1979). An affirmative answer to any one of these questions establishes that the counterclaim is compulsory. *Park Club,* 967 F.2d at 1058.

■ Under this broad standard, the Court has no doubt that TII's antitrust claims are properly classified as compulsory counterclaims to Insultherm's infringement claim. At the center of TII's antitrust claims is the contention that the '490 Patent is invalid because Insultherm engaged in fraudulent or inequitable conduct before the PTO. In addition, TII contends that Insultherm violated the antitrust laws by bringing an infringement action against TII when in fact there was no infringement. Clearly then, Insultherm's infringement claims and TII's antitrust claims are logically related and raise common issues of law and fact—the nature of McBride's conduct before the PTO during the prosecution of the '490 patent, the validity of the '490 patent, and the existence or nonexistence of any infringement. Moreover, the evidence that TII contends will defeat Insultherm's infringement claim (McBride's conduct before the PTO and the absence of infringement) is the very evidence that will support its counterclaim. *Cf. Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926) (addressing former equity rule requiring the responsive pleading of any counterclaim aris-

5. To add yet another dimension to this saga, Thermacon has sued TII, Insultherm, and McBride in the Southern District of New York, alleging, *inter alia,* unfair competition and interference with contractual relations. In its Complaint in the New York action, Thermacon acknowledges its strong desire to gain access to the market in the Gulf states region, and alleges that through Arrow Industrial Management, Inc., apparently a Texas corporation, Thermacon in fact made "significant" sales and profits in the Gulf region in 1991. Because these sales apparently occurred before the alleged conspiracy between Insultherm and Thermacon began, the Court did not consider them when concluding that personal jurisdiction exists over Thermacon. Nonetheless, the fact that Thermacon made significant sales in an area including Texas supports the Court's conclusion that Thermacon should have anticipated being haled into court in Texas.

ing out of the transaction which is the subject matter of the suit, the Court required a counterclaim to be pleaded because "[s]o close is the connection between the case sought to be stated in the bill and that set up in the counterclaim, that it only needs the failure of the former to establish a foundation for the latter."). Thus, TII's antitrust claims fall squarely within the Fifth Circuit's definition of compulsory counterclaims.

TII, however, contends the antitrust claims are not compulsory counterclaims, relying on *Mercoid Corp. v. Mid–Continent Investment Co.*, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944). In *Mercoid*, Mid–Continent sued Mercoid for patent infringement. As a counterclaim, Mercoid contended Mid–Continent misused its patent by attempting to expand the scope of its patent and thus monopolize the market for unpatented parts. Mid–Continent argued that Mercoid's antitrust claim was barred under the doctrine of *res judicata* by virtue of a previous infringement suit Mid–Continent had filed against a third party for whom Mercoid provided the defense. In dismissing that argument, the Supreme Court stated:

> Mercoid's counterclaim for damages.... was based on § 4 of the Clayton Act.... Though Mercoid were barred in the present case from asserting any defense which might have been interposed in the earlier litigation, it would not follow that its counterclaim for damages would likewise be barred. That claim for damages is more than a defense; it is a separate statutory cause of action. The fact that it might have been asserted as a counterclaim in the prior suit by reason of Rule 13(b) [the rule governing permissive counterclaims] ... does not mean that the failure to do so renders the prior judgment *res judicata* as respects it.

320 U.S. at 670–71, 64 S.Ct. at 274.

While *Mercoid* has been followed by some courts, *see Agrashell, Inc. v. Hammons Prods. Co.*, 479 F.2d 269, 287 (8th Cir.), *cert. denied*, 414 U.S. 1022, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973); *Switzer Bros. v. Locklin*, 207 F.2d 483, 486 (7th Cir.1953), *cert. denied*, 347 U.S. 912, 74 S.Ct. 477, 98 L.Ed. 1069 (1954); *Reagan v. Commonwealth Theatres*

*of Puerto Rico, Inc.*, 300 F.Supp. 676 (D.C.Puerto Rico 1969); *Douglas v. Wisconsin Alumni Research Foundation*, 81 F.Supp. 167, 170 (D.C.Ill.1948), the decision has been strongly criticized. *See, e.g.,* 6 Charles A. Wright, Arthur R. Miller, and Mary K. Kane, *Federal Practice & Procedure* § 1412 ("It is difficult to understand why the Court thought that the counterclaim was permissive, since defendant's allegations that plaintiff had sought to create a monopoly through its patent were logically related to plaintiff's allegations that defendant had infringed the same patent and seemed to stem from the same transaction and occurrence."). In fact, the majority of cases addressing the issue (and nearly all of the more recent cases considering the issue) have avoided *Mercoid* by limiting it strictly to its facts, or characterizing the counterclaim portion of the opinion as dictum. *See Burlington Indus., Inc. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir.1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983) (in holding that antitrust counterclaims were compulsory counterclaims to original action asserting breach of a licensing agreement, the court distinguished *Mercoid* on its facts and stated that *Mercoid*'s "continuing validity is open to serious question"); *United States v. Eastport Steamship Corp.*, 255 F.2d 795, 805 (2nd Cir.1958) ("in view of the criticism which the decision has received and the failure of the Court to discuss the principles upon which the decision rests, we think that *Mercoid* cannot be taken as precedent for other than its own limited facts"); *American Packaging Corp. v. Golden Valley Microwave Foods, Inc.*, No. 94–1839, 1995 WL 262522 at *4 (E.D.Pa. May 1, 1995) (antitrust claim based on fraudulent procurement of patent is compulsory counterclaim to prior patent infringement action; limiting *Mercoid* to antitrust claims based on patent misuse rather than inequitable conduct); *Rohm & Haas Co. v. Brotech Corp.*, 770 F.Supp. 928, 933 (D.Dela. 1991) (antitrust, RICO, and common law fraud claims brought by alleged patent infringer bore a logical relationship to patent infringement claims and therefore were compulsory counterclaims that should have been asserted in earlier patent infringement case; limiting *Mercoid* to antitrust cases involving

patent misuse); *Grumman Systems Support Corp. v. Data General Corp.*, 125 F.R.D. 160, 164 (N.D.Cal.1988) (holding that anti-trust claims against copyright owner are compulsory counterclaims in copyright infringement action; characterizing the *Mercoid* holding as "broad sweeping dicta"); *USM Corp. v. SPS Technologies, Inc.*, 102 F.R.D. 167, 170–71 (N.D.Ill.1984) (separate action asserting invalidity of patent and seeking damages for antitrust violations could not be maintained, because the claims were compulsory counterclaims that should have been asserted in previous patent infringement action; limiting to *Mercoid* to its facts); *Lewis Mfg. Co. v. Chisholm–Ryder Co.*, 82 F.R.D. 745, 749–50 (W.D.Pa.1979) (antitrust counterclaim based on inequitable conduct before the PTO is compulsory in patent infringement action; distinguishing *Mercoid* in that it involved counterclaims by a defendant who was not named in the previous infringement action); *Borden Co. v. Sylk*, 42 F.R.D. 429, 432 (E.D.Pa.1967) ("There is nothing ... [in the *Mercoid* opinion] which holds that the counterclaim under § 4 of the Clayton Act, 15 U.S.C. § 15, was permissive (and hence one not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim), rather than compulsory. The court apparently assumed that the counterclaim was a permissive one.").

This Court joins the growing number of courts questioning the counterclaim portion of the *Mercoid* decision. To the extent the *Mercoid* Court actually held (rather than assumed without deciding) that the counterclaim was permissive, this Court agrees that the decision must be strictly limited to its facts—the assertion of antitrust claims based on patent misuse by a defendant involved in but not named in the previous infringement action.[6] Thus limited, *Mercoid* does not compel this Court to characterize TII's claims as permissive rather than compulsory

counterclaims. Moreover, given the ability of the United States to prevent and restrain violations of the Sherman Act, the Court can find no public policy justification for carving out a broad antitrust exception to the compulsory counterclaim rule.

The Court also finds unpersuasive TII's argument that *Professional Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993), *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), and *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986 (9th Cir.1979), *cert. denied*, 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980) "tacitly approved" the use of a second suit to assert antitrust claims. In *Professional Real Estate*, "sham" litigation antitrust claims were brought as counterclaims to a copyright infringement action, the very litigation claimed to be "sham." The Court does not understand the portion of the opinion cited by TII to refer to subsequent antitrust litigation, but rather to litigation much like that before the *Professional Real Estate* court, where the antitrust counterclaims are resolved after the merits of the original infringement action are determined. *See* 508 U.S. at 60, n. 5, 113 S.Ct. at 1928, n. 5.

*Lektro–Vend* likewise offers no support to TII. While *Lektro–Vend* did involve an antitrust action based on noncompetition covenants that were the subject of a state court lawsuit, the antitrust action was filed shortly after the institution of the state court action, and remained dormant until after the resolution of the state proceeding. 433 U.S. at 627–28, 97 S.Ct. at 2885–86. Given that federal courts have exclusive jurisdiction over antitrust claims, *see* 15 U.S.C. § 15, the antitrust claims could not have been considered compulsory in the state court action. Promptly bringing the antitrust claims in federal court and staying the federal pro-

---

6. The Court disagrees with TII's characterization of its antitrust claims as based on Insultherm's misuse of the '490 patent. The patent holder in *Mercoid* misused its patent by attempting to expand the scope of the patent and thus monopolize the market for unpatented components. There was no allegation in *Mercoid* that the patent was invalid. Here, the bulk of TII's antitrust counterclaims hinge on the invalidity of the '490

patent. TII's claims are thus based on fraudulent procurement of the patent, not misuse of the patent. To the extent TII also states an antitrust claim under *Loctite Corp. v. Ultraseal, Ltd.*, 781 F.2d 861 (Fed.Cir.1985), that is, that Insultherm instituted an infringement action knowing that TII was not infringing the '490 patent, this claim is not the type of patent misuse claim contemplated by the *Mercoid* court.

ceedings until the conclusion of the state proceedings seems to be the proper way to handle the peculiar procedural issues involved in *Lektro–Vend.* *See* 6 Charles A. Wright, Arthur R. Miller, and Mary K. Kane, *Federal Practice & Procedure* § 1418. In addition, TII points to a statement made by Justice Blackmun in his concurring opinion in *Lektro–Vend* as further support for its position. Taking issue with statements made by Justice Stevens in his dissent, Justice Blackmun stated

> there is no reason to believe that the Court's reference [in a prior case] to the use of a patent obtained by fraud to exclude a competitor contemplated only one lawsuit. The case cited in connection with that reference, *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), held only that the enforcement of a patent procured by fraud on the Patent Office could state a claim under § 2 of the Sherman Act, where the monopolistic acts alleged included use of the fraudulent patent through a course of action involving both threats of suit and prosecution of an infringement suit.

*Lektro–Vend*, 433 U.S. at 644 n.*, 97 S.Ct. at 2894 n.* (Blackmun, J., concurring). This statement is not a blessing of the use of a separate suit to assert antitrust claims, as TII contends, but rather reflects Justice Blackmun's position that an antitrust violation can be established only by a pattern of baseless lawsuits, rather than by a single lawsuit. *See* 433 U.S. at 623. Thus, *Lektro–Vend* is not inconsistent with this Court's conclusion that TII's antitrust claims are compulsory counterclaims.

Finally, TII contends that *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986 (9th Cir.1979) establishes that antitrust claims need not be brought as counterclaims to an infringement action. In *Handgards*, the defendant in a patent infringement suit did bring a separate antitrust action against the patent holder, alleging bad-faith prosecution of the infringement action. 601 F.2d at 988–90. However, the issue of whether the antitrust claims were compulsory to the infringement suit was apparently never raised by the patent holder, and thus was not before the *Handgards*, court. Appellate courts generally do not rule on issues not before them. *See, e.g., State v. Austin*, 306 S.C. 9, 409 S.E.2d 811, 817 (Ct.App.1991) (Appellate courts, "like well-behaved children, do not speak unless spoken to and do not answer questions they are not asked."). Therefore, this Court will not read *Handgards* as authority for a proposition the *Handgards* court did not decide or apparently even consider.

■ As discussed above, the conduct that forms the foundation of TII's antitrust claims is the very same conduct which TII asserted as defenses in the First Action. The claims arise from the same transaction and occurrence as Insultherm's infringement claims against TII, and are logically related to those claims. Thus, TII's antitrust claims were compulsory counterclaims in the First Action. *See American Packaging Corp.*, 1995 WL 262522 at *4 (antitrust claim based on fraudulent procurement of patent is compulsory counterclaim to prior patent infringement action); *Rohm & Haas*, 770 F.Supp. at 933 (where defendant in patent infringement action brought later action asserting antitrust claims based on fraud committed upon the PTO during the prosecution of several patents, including the patents which were the subject of the infringement action, the antitrust claims were compulsory counterclaims in the infringement case); *USM Corp.*, 102 F.R.D. at 170–71 (antitrust claims based on fraudulent procurement of a patent are compulsory counterclaims to previous infringement action); *Lewis Mfg.*, 82 F.R.D. at 750 (antitrust claims based on patent holder's fraudulent conduct before the PTO are compulsory counterclaims to previous infringement action). The compulsory counterclaim rule is intended

> to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint.

*Southern Constr. Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962).

This case, therefore, presents precisely the situation the rule was designed to prevent. Accordingly, by failing to raise the claims in the First Action, TII is barred from raising its antitrust claims in the Second Action. *Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1080 (5th Cir.1984) (failure to bring compulsory counterclaim bars later action on that claim); *Baker v. Southern Pac. Transp.*, 542 F.2d 1123, 1126 (9th Cir.1976) (where defendant failed to assert compulsory counterclaim in previous action, the defendant waived the claim and could not maintain a separate action on it; district court therefore properly dismissed original defendant's subsequent action asserting the counterclaim); *American Packaging Corp.*, 1995 WL 262522 at *6 (granting summary judgment against antitrust claims brought in separate action that should have been asserted as compulsory counterclaims in previous infringement action); *Rohm & Haas*, 770 F.Supp. at 935 (issuing injunction requiring plaintiff to dismiss antitrust claims pending before another federal district court because the antitrust claims should have been asserted as compulsory counterclaims in prior infringement action).[7]

## III. TII'S MOTION

 Recognizing the possibility that its claims might be classified as compulsory counterclaims, TII has requested leave to file its antitrust claims as counterclaims in the First Action. "When a pleader fails to set up a counterclaim through oversight, inadvertence, excusable neglect, or when justice requires, the pleader may by leave of the court set up the counterclaim by amendment." Fed.R.Civ.P. 13(f). Whether leave to plead omitted counterclaims should be granted is a matter left to the discretion of the Court. *See McLemore v. Landry*, 898 F.2d 996, 1003 (5th Cir.), *cert. denied*, 498 U.S. 966, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990).

TII's antitrust claims are based on the precise conduct of Insultherm that TII used as the basis of its defenses in the First Action; thus, there can be no argument that TII had not discovered the facts necessary to support the antitrust claims.[8] The First Action has been pending for over two years; allowing TII to now assert these counterclaims would work a great prejudice to Insultherm. While the conduct supporting TII's initial defenses and the antitrust claims is largely the same, allowing the counterclaims to proceed would require substantial new discovery to assess the relevant market and determine TII's damages, and therefore would significantly delay the ultimate resolution of this case. Accordingly, considering the prejudice to Insultherm and the totality of the circumstances, the Court in its discretion concludes that justice requires that TII be denied leave to assert the omitted antitrust counterclaims in the First Action. *See, e.g., McLemore*, 898 F.2d at 1003 (trial court did not abuse its discretion by denying defendant's motion for leave to file compulsory counterclaim made six months after the defendant moved for summary judgment, five months after the plaintiff moved for summary judgment, six weeks after the trial court ruled on the summary judgment mo-

---

7. The Court is aware that the Federal Circuit's recent opinion in *Filmtec Corp. v. Hydranautics*, 67 F.3d 931 (Fed.Cir.1995) seems to indicate the Federal Circuit would not treat antitrust claims arising from patent infringement litigation as compulsory counterclaims to the infringement action. However, in *U.S. Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592, 597 (Fed.Cir.1995), the Federal Circuit stated that "the place to challenge litigation as sham is in the asserted sham litigation." Thus, how the Federal Circuit might decide the issue presently before this Court is far from clear. Moreover, while the question of the nature of TII's antitrust claims arose in the context of patent litigation, given the purely procedural nature of the ultimate issue, the Court believes it must follow the law of the Fifth Circuit rather than the Federal Circuit. *See, e.g., Film-*

*tec*, 67 F.3d at 935 (unless a procedural matter is importantly related to an area of the Federal Circuit's exclusive jurisdiction, the Federal Circuit will generally be guided by the views of the circuit in which the trial court sits).

8. TII, however, contends it did not discover the conspiracy between Insultherm and Thermacon until after it filed its answer in the First Action. Assuming this to be true, TII, at the time it filed its answer, clearly had knowledge of McBride's conduct before the PTO, and thus had knowledge of the facts supporting the antitrust claims against Insultherm. Had TII raised the antitrust claims against Insultherm in the First Action as it should have done, it would have been a simple matter to include Thermacon as a defendant once Thermacon's involvement was discovered.

tions, and almost three years after the litigation began); *Imperial Enterprises, Inc. v. Fireman's Fund Ins. Co.*, 535 F.2d 287, 293 (5th Cir.1976) (no abuse of discretion in denying motion for leave to file compulsory counterclaim where motion was made almost one year after the defendant became aware of the facts underlying the counterclaim).

## IV. CONCLUSION

To summarize, TII's antitrust claims were compulsory counterclaims in the First Action, and TII's failure to assert the claims in that action prevents TII from asserting the claims in the Second Action. Therefore, TII's claims against Insultherm, Thermacon, and McBride in the Second Action must be dismissed. In addition, TII's Motion for leave to amend its answer in the First Action is untimely, in view of the prejudice that would be suffered by Insultherm if the amendment were allowed at this late stage of the litigation.

Accordingly, Insultherm's Motion to Reconsider is hereby **GRANTED.** The Court's June 29, 1995 Orders consolidating the First Action and the Second Action and granting TII leave to file a counterclaim and add defendants are hereby **VACATED,** and TII's Motion for Leave to File Counterclaim is hereby **DENIED.** Insultherm's and McBride's Motion to Dismiss TII's Complaint is hereby **GRANTED,** and all claims asserted by TII in the Second Action are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

### FINAL JUDGMENT

For the reasons set forth in the Order issued by the Court this day, the Court hereby **GRANTS** Insultherm's Motion for Reconsideration and Insultherm's and McBride's Motion to Dismiss. Accordingly, the Court's Order dated June 29, 1995, consolidating Civil Action No. G–93–558 and Civil Action No. G–95–348 and the Court's Order dated June 29, 1995, granting Tank Insulation leave to file a counterclaim and add defendants are hereby **VACATED.** All claims asserted by Tank Insulation in Civil Action No. G–95–348 are hereby **DISMISSED WITH PREJU-**

DICE. All parties are **ORDERED** to bear their own costs incurred herein to date.

THIS IS A FINAL JUDGMENT.

**IT IS SO ORDERED.**